288 F.3d 391
 UNITED STATES of America, Plaintiff-Appellee,
v.
CITY OF LOS ANGELES, CALIFORNIA; Board Of Police Commissioners of the City of Los Angeles; City of Los Angeles Police Department, Defendants-Appellees,
Los Angeles Police Protective League, Proposed Intervener-Appellant.
United States of America, Plaintiff-Appellee,
Michael Garcia; Ernesto Luevano; Duc Pham; Jesus Nieto; Salvador Salas; Robert Hernandez; Carlos Gonzalez; David Askew; Timothy Campbell; Alberto Lovato; Tonye Allen; Reverend James M. Lawson, Jr.; Southern Christian Leadership Conference Of Los Angeles; Acluof Southern California; Homeboy Industries; Asian Pacific American Legal Center; Radio Sin Fronteras, Proposed Interveners-Appellants,
v.
City of Los Angeles, California; Board of Police Commissioners of the City of Los Angeles; City of Los Angeles Police Department, Defendants-Appellees.
 No. 01-55182.
 No. 01-55453.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 6, 2002.
 Filed April 22, 2002.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Gregory G. Petersen and Andrea F. Weiss, Petersen Law Firm, a Law Corporation, Costa Mesa, CA; Mark D. Rosenbaum and Catherine E. Lhamon, ACLU Foundation of Southern California, Los Angeles, CA; Erwin Chemerinsky, University of Southern California Law School, Los Angeles, CA, for the proposed-interveners-appellants.
 Sarah E. Harrington, United States Department of Justice, Washington, DC, for the plaintiff-appellee and Patricia L. Glaser and R. Paul Katrinak, Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, Los Angeles, CA, for the defendants-appellees.
 Appeal from the United States District Court for the Central District of California; Gary A. Feess, District Judge, Presiding. D.C. No. CV-00-11769-GAF.
 Before BROWNING, THOMAS and RAWLINSON, Circuit Judges.
 OPINION
 THOMAS, Circuit Judge.
 
 
 1
 In this appeal, various third parties contend that the district court erred by denying their motions for intervention. We affirm in part and reverse in part.
 
 
 2
 * In the underlying action, the United States alleged that the City of Los Angeles ("the City"), the Board of Police Commissioners of the City of Los Angeles, and the Los Angeles Police Department ("LAPD") (collectively, the "City defendants") engaged in a pattern or practice of depriving individuals of constitutional rights through the use of excessive force, false arrests and improper searches and seizures in violation of 42 U.S.C. § 14141.[1] The suit was an outgrowth of a lengthy investigation of the LAPD's Rampart Division and, in particular, its anti-gang unit known as Community Resources Against Street Hoodlums ("CRASH"). The inquiry was based on allegations made by former LAPD officer Rafael Perez who, pursuant to a criminal plea agreement, offered testimony of misconduct and corruption within the CRASH unit.
 
 
 3
 Before filing this suit, the United States discussed the issues with the City defendants. The parties agreed to enter into a consent decree that would resolve the suit. They negotiated a draft consent decree that was approved by the Los Angeles City Council. Accordingly, on the same day that the United States filed the complaint in this action, the parties filed a "Joint Application to Enter Consent Decree" and lodged a proposed consent decree with the district court.
 
 
 4
 The Los Angeles Police Protective League (the "Police League") responded by (1) filing an action seeking to enjoin implementation of the consent decree and a declaration that 42 U.S.C. § 14141 is unconstitutional,[2] and (2) filing a motion for leave to intervene in the instant action. The Police League is the designated bargaining unit for the "rank and file" LAPD officers — the approximately 8,600 officers who do not hold ranks higher than lieutenant. The Police League and the City presently operate pursuant to a Memorandum of Understanding ("MOU") which governs the terms and conditions under which members of the Police League are employed by the City. The Police League claims that the consent decree proposed to the district court is incompatible with the MOU. The district court denied the Police League's motion to intervene as a matter of right and its motion for permissive intervention.
 
 
 5
 A number of community groups[3] and individuals[4] ("the Community Interveners") also requested leave to intervene in the underlying action, both as of right and permissively. The individuals are people of color, many of whom live in areas of Los Angeles that have high crime rates, who have submitted uncontroverted declarations stating that they have suffered from, and are likely to continue to suffer from, the unconstitutional police misconduct that forms the basis of the United States' suit against the City defendants. The organizations are various community action groups that have worked with such individuals and the LAPD for many years, seeking police reform. The Community Interveners desire to intervene to help ensure that the reform sought is successful and to be able to participate in that reform process. Along with their motion to intervene, the Community Interveners filed a complaint in intervention, asserting claims as plaintiffs under 42 U.S.C. § 1983 against the City defendants.
 
 
 6
 The district court denied all the requests for intervention. The Police League and the Community Interveners have timely appealed that decision. "A district court's denial of a motion for intervention as of right is an appealable `final decision.'" Donnelly v. Glickman, 159 F.3d 405, 409 (9th Cir.1998). If the district court has abused its discretion in denying permissive intervention, then appellate jurisdiction also exists to review the district court's decision to deny permissive intervention. League of United Latin Am. Citizens v. Wilson, 131 F.3d 1297, 1307-08 (9th Cir.1997).
 
 II
 
 7
 Intervention as of right is governed by Federal Rule of Civil Procedure 24(a), which provides in part:
 
 
 8
 Upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 9
 Thus, one who seeks to intervene as of right in a pending lawsuit must satisfy four requirements. The applicant must show that:
 
 
 10
 (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.
 
 
 11
 Donnelly, 159 F.3d at 409 (internal quotation marks omitted).
 
 
 12
 In evaluating whether these requirements are met, courts "are guided primarily by practical and equitable considerations." Id. Further, courts generally "construe[] [the Rule] broadly in favor of proposed intervenors." United States ex rel. McGough v. Covington Techs. Co., 967 F.2d 1391, 1394 (9th Cir.1992). "`A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a practical interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court.'" Forest Conservation Council v. U.S. Forest Serv., 66 F.3d 1489, 1496 n. 8 (9th Cir.1995) (quoting Greene v. United States, 996 F.2d 973, 980 (9th Cir.1993) (Reinhardt, J., dissenting)).
 
 
 13
 The district court found the Police League's motion to intervene to be timely, a conclusion not challenged on appeal. The district court did not specifically rule on the timeliness of the Community Interveners' motion, but none of the other parties challenged its timeliness below or on appeal. Further, the motion was filed only approximately one and half months after the suit was filed. Thus, only the remaining three factors need to be addressed in this appeal.
 
 
 14
 "An applicant has a `significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a `relationship' between its legally protected interest and the plaintiff's claims." Donnelly, 159 F.3d at 409. The relationship requirement is met "if the resolution of the plaintiff's claims actually will affect the applicant." Id. at 410. The "interest" test is not a clear-cut or bright-line rule, because "[n]o specific legal or equitable interest need be established." Greene, 996 F.2d at 976. Instead, the "interest" test directs courts to make a "practical, threshold inquiry," id., and "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process," County of Fresno v. Andrus, 622 F.2d 436, 438 (9th Cir.1980) (internal quotation marks and citation omitted).
 
 
 15
 To determine whether the existing parties adequately represent an applicant's interest, we consider:
 
 
 16
 (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect. The prospective intervenor bears the burden of demonstrating that existing parties do not adequately represent its interests.
 
 
 17
 Northwest Forest Res. Council v. Glickman, 82 F.3d 825, 838 (9th Cir.1996) (citations omitted). The requirement of inadequate representation "is satisfied if the applicant shows that representation of his interest [by existing parties] `may be' inadequate." Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972).
 
 III
 
 18
 The district court denied the Police League's requests for both intervention as of right and permissive intervention. We reverse as to intervention as of right, and we therefore do not consider whether the Police League was entitled to intervene permissively.
 
 
 19
 * The district court determined that the Police League had no protectable interest in the merits of the action, but that it had a protectable interest in the proposed consent decree as a remedy.
 
 
 20
 The district court erred as to the merits of the action. Of course, as the district court noted, the Police League and the officers it represents have no protectable interest in violating other individuals' constitutional rights. No one could seriously argue otherwise. However, the Police League claims a protectable interest because the complaint seeks injunctive relief against its member officers and raises factual allegations that its member officers committed unconstitutional acts in the line of duty. These allegations are sufficient to demonstrate that the Police League had a protectable interest in the merits phase of the litigation.
 
 
 21
 The district court found that the Police League did not have a protectable interest in the merits because the proposed consent decree's injunctive provisions pertained only to the City defendants and because approval of the proposed decree would obviate the need to prove liability. However, in reaching these conclusions the court impermissibly assumed that it would in fact approve the proposed consent decree. No hearing had yet been held on the consent decree and it was unknown whether the district court would enter a decree at all or, if so, in the form then proposed.
 
 
 22
 When the potential scope of an action is narrowed by amended pleadings or court orders, or when an existing party expressly and unequivocally disclaims the right to seek certain remedies, the court may consider the case as restructured rather than on the original pleadings in ruling on a motion to intervene. For example, in Donnelly, we held that male Forest Service employees had no interest in the remedy phase of an employment discrimination suit brought by female Forest Service employees because the female plaintiffs expressly and unequivocally waived any right to seek remedies that might impact male employees, such as class-based wage or promotion relief. 159 F.3d at 410-11.
 
 
 23
 However, if restructuring of the action has not yet been accomplished, or if a party's disclaimer of certain remedies is contingent rather than unequivocal, then the district court is not free to consider the potential for issue reduction when determining whether a putative intervener has a protectable interest in the merits of the action. See Forest Conservation Council, 66 F.3d at 1497 n. 9 (disregarding speculative statements made during oral argument on appeal about a willingness to narrow the scope of relief sought); see also Brennan v. Conn. State UAW Cmty. Action Program Council (CAP), 60 F.R.D. 626, 631 (D.Conn.1973) ("Whether an applicant's interest would be impaired by disposition of a lawsuit depends on the range of dispositions open to a court about which an applicant is entitled to be concerned, not the specific disposition the original parties are seeking to have a court approve.").
 
 
 24
 Here, the case had not yet been restructured because the consent decree had not been entered. Further, the United States did not unequivocally and completely disclaim the remedies sought in its complaint against the Police League's member officers: it argued only that the officers would not be subject to injunctive relief if the district court approved the consent decree. In addition, the consent decree itself contains a provision allowing the United States, in certain circumstances, to seek to dissolve the consent decree and litigate the merits of the action on the basis of the original complaint. Thus, when the district court denied the motion to intervene, the Police League still had a protectable interest in the merits of the litigation. The district court erred in concluding to the contrary, in anticipation of future approval of the proposed consent decree.
 
 
 25
 The district court correctly concluded that the Police League had a protectable interest in the remedy sought by the United States. The Police League has state-law rights to negotiate about the terms and conditions of its members' employment as LAPD officers and to rely on the collective bargaining agreement that is a result of those negotiations. See Cal. Gov't Code §§ 3500-3511. These rights give it an interest in the consent decree at issue.
 
 
 26
 Except as part of court-ordered relief after a judicial determination of liability, an employer cannot unilaterally change a collective bargaining agreement as a means of settling a dispute over whether the employer has engaged in constitutional violations. Local Number 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 528-30, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986) (noting that parties settling their own dispute cannot impose obligations on third parties and that "a court may not enter a consent decree that imposes obligations on a party that did not consent to the decree"); W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 771, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983) ("Absent a judicial determination, the [EEOC], not to mention the Company, cannot alter the collective bargaining agreement without the Union's consent."); United States v. City of Hialeah, 140 F.3d 968, 975 (11th Cir.1998); United States v. City of Miami, 664 F.2d 435, 441-42 (5th Cir.1981).
 
 
 27
 Thus, the Police League's interest in the consent decree is two-fold. To the extent that it contains or might contain provisions that contradict terms of the officers' MOU, the Police League has an interest. Further, to the extent that it is disputed whether or not the consent decree conflicts with the MOU, the Police League has the right to present its views on the subject to the district court and have them fully considered in conjunction with the district court's decision to approve the consent decree. See EEOC v. AT & T, 506 F.2d 735, 741-42 (3d Cir.1974).
 
 B
 
 28
 Given the Police League's protectable interest in both the merits of the action and the remedy sought by the United States and the status of the case at the time, the district court erred in concluding that the Police League's interest would not be impaired if intervention was not granted. The consent decree had not been approved, judgment had not been entered and, although the decree had been proposed, the possibility remained that it would not be approved. Further, under the terms of the proposed consent decree, the United States retained the right to file a motion to dissolve the decree and proceed with the suit if the City defendants and the Police League were unable to resolve a collective bargaining issue such that the consent decree could not be implemented fully.
 
 
 29
 Although it denied intervention, the district court granted the Police League amicus curiae status. However, amicus status is insufficient to protect the Police League's rights because such status does not allow the Police League to raise issues or arguments formally and gives it no right of appeal. See Forest Conservation Council, 66 F.3d at 1498 ("We reject appellees' claim that amicus curiae status is sufficient for appellants to protect their interests by expressing their concerns to the court regarding the propriety and scope of injunctive relief.").
 
 
 30
 The district court held that the proposed consent decree adequately protects the Police League's bargaining and negotiation rights. Certain provisions of the proposed consent decree provide that nothing in the consent decree is intended to detract from the Police League's bargaining rights under California law or existing contractual rights under the MOU. However, the consent decree itself provides for an implementation process, part of which includes bargaining with the Police League over the specific provisions that are subject to bargaining. Normally, California law alone governs the bargaining process between the Police League and the City defendants, and any disputes relating to that bargaining process would be resolved in California courts. The consent decree, however, alters this process in several ways, notwithstanding the fact that the Police League has never consented to these changes.
 
 
 31
 First, if the Police League and the City defendants are unable to agree on which provisions of the consent decree are subject to bargaining, "the City shall seek declaratory relief from th[e district c]ourt to resolve such issue, provided that such bargaining unit shall receive notice and an opportunity to be heard by the [district c]ourt on this issue." Thus, the Police League could be required to resolve a bargaining dispute in federal court rather than state court.
 
 
 32
 Second, if "the City believes the meet and confer process, consultation, or any such proposed agreements with the applicable bargaining units or such proposed unilateral actions, resulting from the meet and confer process, will impair the City's ability timely to implement one or more provisions of this Agreement ... then the City shall so report to the [district c]ourt and shall seek appropriate declaratory or injunctive relief (including specific performance) on such provision(s)." This paragraph apparently means that if the City decides that the bargaining process required by law is too slow, it can ask the district court to override the required bargaining process and order it to implement the consent decree provision at issue. Thus, the consent decree by its terms purports to give the district court the power, on the City's request, to override the Police League's bargaining rights under California law and require the City to implement disputed provisions of the consent decree. As in EEOC v. AT & T, the Police League's "continuing ability to protect and enforce [its] contract provisions will be impaired or impeded by the consent decree." 506 F.2d at 742.
 
 
 33
 The United States argues that these provisions do not, as a practical matter, impair the Police League's rights because it is purely speculative that the parties will not agree on what provisions are subject to collective bargaining and on how any disputes over those provisions should be resolved. This analysis is flawed because the relevant inquiry is whether the consent decree "may" impair rights "as a practical matter" rather than whether the decree will "necessarily" impair them. Fed. R.Civ.P. 24(a)(2).
 
 C
 
 34
 The district court did not consider whether the existing parties would adequately protect the Police League's interests because it held that the action does not impair those interests. In this case, it is clear that the existing parties do not adequately represent the Police League, a determination we may make because the question is a matter of law subject to de novo review and the record is fully developed. See, e.g., Forest Conservation Council, 66 F.3d at 1498.
 
 
 35
 Normally, "`a presumption of adequate representation generally arises when the representative is a governmental body or officer charged by law with representing the interests of the absentee.'" Id. at 1499 (quoting Pennsylvania v. Rizzo, 530 F.2d 501, 505 (3d Cir.1976)). However, this presumption arises when the government is acting on behalf of a constituency that it represents. Id. The situation is different when the government acts as an employer, as here. The presumption has not been applied to parties who are antagonists in the collective bargaining process. The Police League is the designated representative of its members in that endeavor; the City is not. Further, the record of this case and the past dealings of the parties indicate a marked divergence of positions concerning key elements of the decree and underlying theories of liability. In sum, the Police League has made the minimal showing needed to establish that the City defendants' representation "may" be inadequate.
 
 D
 
 36
 At the time it sought intervention as a matter of right, the Police League had a protectable interest in both the merits of the underlying action and the remedies sought. As the circumstances then existed, the Police League's interest was likely to be impaired, and no party to the litigation adequately represented that interest. Thus, the district court erred in denying the Police League intervention as a matter of right. Given this conclusion, we need not consider the Police League's arguments concerning denial of its request for permissive intervention.
 
 IV
 
 37
 The district court properly denied the Community Interveners' motion to intervene as a matter of right. Although the Community Interveners may have a protectable interest related to the subject matter of the litigation,[5] it is doubtful that their interests are impaired by the litigation. The litigation does not prevent any individual from initiating suit against LAPD officers who engage in unconstitutional practices or against the City defendants for engaging in unconstitutional patterns or practices. Nor does any aspect of the litigation prevent the community organizations from continuing to work on police reform.
 
 
 38
 However, more importantly, neither the individual nor organizational community members have overcome the presumption that the United States, as a government litigant, is adequately protecting their interests. See Forest Conservation Council, 66 F.3d at 1499. Unlike the Police League, both the individual and organizational community members are the exact constituents the United States is seeking to protect in this action. Thus, this case is not like Forest Conservation Council, in which the intervention applicants had "more narrow, parochial interests" than did the existing government plaintiff. 66 F.3d at 1499.
 
 
 39
 The Community Interveners do not contest any portion of the consent decree. Rather, they seek to intervene merely to ensure that it is strictly enforced. Thus, they share the same objective as the United States. Any differences they have are merely differences in strategy, which are not enough to justify intervention as a matter of right. See Northwest Forest Res. Council, 82 F.3d at 838.
 
 
 40
 Relying on Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525 (9th Cir.1983), the Community Interveners argue that the presumption of adequacy of government representation is overcome because President Bush, who took office after this suit was filed, expressed opposition to consent decrees between the federal government and local law enforcement agencies on several occasions during his campaign. In Sagebrush, we noted that ordinarily, "the mere change from one presidential administration to another, a recurrent event in our system of government, should not give rise to intervention as of right in ongoing lawsuits." 713 F.2d at 528. The Community Interveners here have presented more than just a change in administration: the record contains numerous media stories reporting comments made by President Bush on several occasions expressing his dislike for this specific type of lawsuit.
 
 
 41
 However, Sagebrush was a special case. In it, the new named defendant, Secretary of the Interior James G. Watt, had been the president of the legal foundation representing the plaintiffs in the specific case at issue prior to his appointment. Id. at 528-29. Here, no member of the new administration was involved on the other side of this litigation. Campaign rhetoric and perceived philosophic differences without more specific objective evidence in the record are insufficient by themselves to demonstrate adversity of interest. Thus, the mere change of administration is insufficient to alter the conclusion that the interests of the Community Interveners are adequately protected by the United States.
 
 V
 
 42
 Although the district court did not err in denying the Community Interveners' motion to intervene as a matter of right, the court did not conduct the proper analysis in determining permissive intervention. Thus, remand is required.
 
 
 43
 Permissive intervention is governed by Federal Rule of Civil Procedure 24(b), which provides in part:
 
 
 44
 Upon timely application anyone may be permitted to intervene in an action ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.
 
 
 45
 Thus, "a court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." Northwest Forest Res. Council, 82 F.3d at 839.
 
 
 46
 The district court did not specifically apply the standards for permissive intervention to the Community Interveners. Rather, the district court held that, as a matter of law, intervention for enforcement of a proposed government consent decree is never permissible. We have never so held. Indeed, such a holding would be inconsistent with our treatment of the interveners in United States v. Stone Container Corp., 196 F.3d 1066 (9th Cir.1999). Rather, permissive intervention has been granted by the courts on a case-by-case basis, founded on analysis of the factors identified in Rule 24(b).
 
 
 47
 The district court relied on Hook v. Arizona, 972 F.2d 1012 (9th Cir.1992), and Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206 (9th Cir.), cert. denied, 531 U.S. 812, 121 S.Ct. 44, 148 L.Ed.2d 14 (2000), for its conclusion. However, these cases are inapposite. Hook and Klamath Water Users involved cases in which third parties sought to enforce pre-existing consent decrees. Relying on the contract law principle that incidental third-party beneficiaries lack standing to enforce a government contract from which they benefit, we allowed intended third-party beneficiaries to sue to enforce a pre-existing consent decree in Hook, 972 F.2d at 1014-15, and did not allow incidental third-party beneficiaries to sue in Klamath Water Users, 204 F.3d at 1211-12.
 
 
 48
 In contrast, the Community Interveners in this case, like the interveners in Stone Container, sought permissive intervention prior to the approval of the consent decree to protect their interests from the inception of the litigation. Thus, to use a contract analogy, at the time they sought intervention, the Community Interveners had not acquired third-party beneficiary status because no contract had yet been formed. Restatement (Second) of Contracts § 309(1) ("A promise creates no duty to a beneficiary unless a contract is formed between the promisor and the promisee; and if a contract is voidable or unenforceable at the time of its formation the right of any beneficiary is subject to the infirmity"). Therefore, the logic of Hook and Klamath Water Users is not applicable in the present context, and the court erred in concluding otherwise.
 
 
 49
 If the court had allowed permissive intervention, the Community Interveners would have made proposals in connection with the proposed consent decree. The fact that the Community Interveners may be also interested in enforcement of the consent decree is not fatal to their permissive intervention request. Because the request was filed before the consent decree was approved, the request should have been analyzed on its own merits without anticipatory consideration of the effect of the proposed consent decree. Thus, the district court erred in holding that permissive intervention was improper as a matter of law, and we must remand so that the district court may reassess the request for permissive intervention under the criteria established by Rule 24(b).
 
 VI
 
 50
 The United States and the City defendants urge us to prevent intervention because allowing it would slow the process. These parties underscore the difficult and complex negotiations predating the proposal of the consent decree. However, the district court's management of this case demonstrates that it is perfectly capable of managing this litigation in a fair, but expedient fashion. More importantly, the idea of "streamlining" the litigation, as both the City defendants and the United States describe it, should not be accomplished at the risk of marginalizing those — such as the Police League and the Community Interveners — who have some of the strongest interests in the outcome.
 
 
 51
 Thus, for the reasons stated herein, we reverse the district court's order denying the Police League's motion for intervention as a matter of right. We affirm the district court's denial of the Community Interveners' motion to intervene as a matter of right. We reverse the district court's denial of the Community Interveners' motion for permissive intervention, and remand that question to the district court for re-analysis under Rule 24(b).
 
 
 52
 After the notices of appeal were filed in this case, the district court approved and entered the consent decree. It was proper for the district court to continue to act in the case notwithstanding the intervention appeal because no stay was entered. Thus, although this appeal involves intervention decisions made at the onset of the case, our holding does not require the district court to turn back the clock or rescind the consent decree. Any intervention order issued on remand shall allow the affected parties to intervene as of the date of the intervention order and to be treated as intervener parties from that date forward.
 
 
 53
 AFFIRMED IN PART; REVERSED IN PART; REMANDED.
 
 
 
 Notes:
 
 
 [1]
 The statute at issue, 42 U.S.C. § 14141, provides:
 (a) Unlawful conduct
 It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers ... that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.
 (b) Civil action by Attorney General
 Whenever the Attorney General has reasonable cause to believe that a violation of paragraph (1) has occurred, the Attorney General, for or in the name of the United States, may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice.
 
 
 [2]
 The dismissal of this action is the subject of a separate appeal before this Court
 
 
 [3]
 Southern Christian Leadership Conference of Los Angeles, ACLU of Southern California, Homeboy Industries, Asian Pacific American Legal Center and Radio Sin Fronteras
 
 
 [4]
 Michael Garcia, Ernesto Luevano, Duc Pham, Jesus Nieto, Salvador Salas, Robert Hernandez, Carols Gonzalez, David Askew, Timmy Campbell, Alberto Lovato, Tonye Allen, and the Reverend James M. Lawson, Jr
 
 
 [5]
 The individual community members assert an interest in being free from unconstitutional police misconduct. The organizational community members assert an interest analogous to the interest asserted by special interest groups in suits challenging measures the organizations helped to createE.g., Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1397 (9th Cir.1995); Idaho v. Freeman, 625 F.2d 886, 887 (9th Cir.1980). The connection here is less direct, both because the organizational community members have worked for reform of the LAPD generally rather than for this specific consent decree and because the suit seeks to enforce the program these groups want rather than to challenge that program. Nonetheless, for purposes of establishing at least an interest these cases seem instructive.