# United States Court of Appeals
# for the Federal Circuit

―――――――――――――

**WOLFSEN LAND & CATTLE COMPANY,
TURNER ISLAND FARMS, INC., WEST TURNER
ISLAND RANCH, LONE WILLOW RANCH,
DONALD C. SKINNER, LYNN W. SKINNER,
LAWRENCE SCOTT SKINNER, THOMAS CLAY
SKINNER, LAUREL LYNN SKINNER, STACIE L.
SKINNER-HANSON, LAWRENCE JOHN WOLFSEN,
MEW VENTURES, ROBERT MUELLER,** AND
**JOANNE MUELLER,**
*Plaintiffs-Appellees,*

v.

**PACIFIC COAST FEDERATION OF FISHERMEN'S
ASSOCIATIONS,**
*Movant-Appellant,*

AND

**NATURAL RESOURCES DEFENSE COUNCIL,**
*Movant-Appellant,*

v.

**UNITED STATES,**
*Defendant.*

―――――――――――――

2011-5113

―――――――――――――

Appeal from the United States Court of Federal Claims in case no. 10-CV-580, *Chief Judge* Emily C. Hewitt.

———————————

Decided: September 21, 2012

———————————

ROGER J. MARZULLA, Marzulla Law, LLC, of Washington, DC, argued for plaintiff-appellee. With him on the brief was NANCIE G. MARZULLA.

MICHAEL E. WALL, Natural Resources Defense Council, of San Francisco, California, argued for movant-appellant. On the brief were JENNIFER A. SORENSON. Of counsel on the brief was PHILIP F. ATKINS-PATTENSON, Sheppard Mullin Richter & Hampton LLP, of San Francisco, California. Of counsel were JOHN D. ECHEVERRIA, of South Royalton, Vermont, and KATHERINE S. POOLE, Natural Resources Defense Council, of San Francisco, California.

———————————

Before DYK, CLEVENGER, and REYNA, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* CLEVENGER.
Concurring opinion filed by *Circuit Judge* REYNA.

CLEVENGER, *Circuit Judge*.

This is a takings case arising from the government's releases of water from a dam in central California. Downstream property owners sued in the Court of Federal Claims, alleging that the releases unlawfully impaired their property rights in the water and inundated their land.

The government had released the water in accordance with a consent order entered by a district court and expressly approved by Congress. The consent order was the result of environmental litigation pursued over a number of years by certain groups interested in the ecological fate of the river. After the present lawsuit was filed, two of these groups moved to intervene as of right, arguing that this case implicated their interests. The Court of Federal Claims denied their motion, finding that the groups' interests were sufficiently aligned with the government's as to create no foundation for intervention. *Wolfsen Land & Cattle Co. v. United States*, 98 Fed. Cl. 507 (May 24, 2011) ("*Fed. Cl. Op.*"). We affirm.

I

A

This case's story started in 1942, when the U.S. Bureau of Reclamation dammed the upper San Joaquin River near Friant, California. Friant Dam, which still operates today, generates electricity and collects water for agriculture. But it also caused portions of the river below to dry up, leading to the extermination of Chinook salmon and other species from areas they had previously occupied, as well as other ecological consequences.

In 1988, a group of plaintiffs sued the federal government over the dam's operation. The Pacific Coast Federation of Fishermen's Associations and the Natural Resources Defense Council (collectively, "PCFFA") were among them. They claimed that the dam's operation contravened various state and federal environmental protection laws. For the next eighteen years, the parties litigated in the district court for the Eastern District of California.

In 2006, they finally reached a settlement. The agreement obliged the government to release water from the dam for the purpose of restoring and maintaining fish populations downstream, while continuing to support the surrounding landowners who had come to depend on the water the dam collected. *See* Stipulation of Settlement, *Natural Res. Def. Council v. Rodgers*, No. CIV SS-88-1658 (E.D. Cal. Sept. 16, 2006), ECF No. 1341 ("Litigation Settlement"). The Litigation Settlement also bound the signatories to request implementing legislation from Congress, as some contemplated actions could not be taken without legislative authority. *Id.* ¶ 8. This was done, and Congress subsequently passed the San Joaquin River Restoration Settlement Act, Pub. L. No. 111-11, §§ 10001–10011, 123 Stat. 1349 (2009) ("Settlement Act"), which authorized and directed the Secretary of the Interior to implement the Litigation Settlement.

All this having been done, in October 2009 the Bureau of Reclamation initiated the first release of water from the dam. Releases have continued since, in accordance with the Litigation Settlement and the Settlement Act.

B

Those releases gave rise to the present case. In August of 2010, Wolfsen Land & Cattle Co., along with other owners of land downstream of Friant Dam (collectively, "Wolfsen"), sued the government for taking of property. Wolfsen argued that the releases impaired its protectable interest in the released water. It also contended that its land had been damaged as a result of inundation by the released water. Wolfsen sought compensation and legal expenses.

PCFFA moved to intervene as of right under Court of Federal Claims Rule 24(a)(2). It argued that the case implicated its interest in full performance of the Litiga-

tion Settlement and under the Settlement Act. PCFFA presented several lines of reasoning to justify its motion, but chief was this: judgment for Wolfsen could involve a ruling that Wolfsen and others in its position had a protectable property interest in the water released past Friant Dam. Such an outcome, said PCFFA, would substantially threaten the government's ability to make the water releases contemplated by the Litigation Settlement and the Settlement Act. As a beneficiary of those instruments, PCFFA claimed a right to participate in proceedings before the Court of Federal Claims.

Wolfsen opposed PCFFA's motion; the government neither supported nor opposed. The Court of Federal Claims denied the motion. *Fed. Cl. Op.*

PCFFA appealed to this court. Denial of a motion to intervene is a final judgment and immediately appealable. *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 377 (1987). This court has jurisdiction over final judgments of the Court of Federal Claims. 28 U.S.C. § 1295(a)(3).

## II

This court has not previously identified the standard to be applied when reviewing a trial court's denial of a motion to intervene as of right. PCFFA argues for de novo review, while Wolfsen urges review for abuse of discretion. Both sides cite authority from the regional circuits, which are split on the question, though slightly more courts favor de novo review. *Compare, e.g.*, *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010) (applying de novo review), *United States v. Albert Inv. Co.*, 585 F.3d 1386, 1390 (10th Cir. 2009) (same), *S. Dakota v. Ubbelohde*, 330 F.3d 1014, 1024 (8th Cir. 2003) (same), *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999) (same), *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th

Cir. 1994) (same), *and Nissei Sangyo Am., Ltd. v. United States*, 31 F.3d 435, 438 (7th Cir. 1994) (same), *with Geiger v. Foley Hoag LLP Ret. Plan*, 521 F.3d 60, 64 (1st Cir. 2008) (applying abuse of discretion review), *Person v. N.Y. State Bd. of Elections*, 467 F.3d 141, 144 (2d Cir. 2006) (same), *Brody v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992) (same), *and In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991) (same).

We find it unnecessary to reach this question, as we see no error in the Court of Federal Claims' judgment. *Cf. Am. Mar. Transp., Inc. v. United States*, 870 F.2d 1559, 1561 (Fed. Cir. 1989) (finding no need to reach this issue in similar circumstances). We would affirm under both proposed standards of review. Because the question of the standard to apply is non-dispositive, we need not address it.

## III

### A

The Court of Federal Claims' rule concerning intervention as of right states:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
>
> . . .
>
>> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. Cl. R. 24(a).

These requirements are construed in favor of intervention. *Am. Mar. Transp.*, 870 F.2d at 1561. The rule sets out a four-part test. First, the motion must be timely. Second, the movant must claim some interest in the property affected by the case. This interest must be "legally protectable"—merely economic interests will not suffice. *Id.* at 1562. Third, that interest's relationship to the litigation must be "of such a *direct* and *immediate* character that the intervenor will either gain or lose by the *direct* legal operation and effect of the judgment." *Id.* at 1561. Fourth, and most importantly for this case, the movant must demonstrate that said interest is not adequately addressed by the government's participation. *Id.* at 1560.

## B

In this appeal, timeliness is not disputed. But in denying PCFFA's motion the Court of Federal Claims held that PCFFA could not satisfy Rule 24(a)(2)'s other three requirements.

First, the court held that PCFFA had failed to show a direct, non-contingent interest in this case. *Fed. Cl. Op.*, 98 Fed. Cl. at 512–15. It reasoned that the only direct result of judgment for Wolfsen in this case would be the government paying money damages. Any collateral rulings (i.e., a determination that Wolfsen had a protectable interest in the released water) would implicate PCFFA only secondarily, and thus were not the kind of interests protected by the rule. Because we resolve this appeal on other grounds, we need not reach this aspect of the Court of Federal Claims' reasoning.

Second, the court held that even if PCFFA had alleged a protectable interest, the interest did not relate to this case in such a way that failure to permit intervention would impede PCFFA's ability to protect itself. The court

pointed out that if, in the aftermath of judgment in this case, the government failed to meet its obligations to PCFFA, PCFFA could seek relief in district court. *Id.* at 515. Again, because we resolve this appeal on other grounds we need not take up this argument.

Third, the court held that even if PCFFA had a protectable interest, and even if that interest related to this case in the manner contemplated by the rule, PCFFA's interests were adequately protected by the government's participation in this case. *Id.* at 516. As set forth below, we agree, and on that basis affirm.

## C

The burden of showing inadequacy of representation is "minimal," requiring only a showing that an existing party's representation of PCFFA's interests "may be" inadequate as to some aspect of the case at bar. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (permitting intervention by a union member notwithstanding participation of the Secretary of Labor because the Secretary's twin duties to represent both the aggrieved member and the public generally might engender an adversity of interest). This court has not frequently considered the law surrounding intervention as of right, nor has it assessed the showing required for a prospective intervenor to carry his "minimal" burden of proving inadequate representation by any existing party. In such circumstances, the decisions of regional circuits, while not binding, are nevertheless "persuasive authority and instructive." *Bank of Guam v. United States*, 578 F.3d 1318, 1326 n.4 (Fed. Cir. 2009).

The Ninth Circuit recently considered how to analyze adequacy of representation:

In evaluating adequacy of representation, we examine three factors: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). The most important factor in assessing the adequacy of representation is how the interest compares with the interests of existing parties. If an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997). To rebut the presumption, an applicant must make a "compelling showing" of inadequacy of representation. *Arakaki*, 324 F.3d at 1086.

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (internal quotation marks omitted and citations edited). Other regional circuits have embraced similar approaches. *E.g.*, *San Juan Cnty. v. United States*, 503 F.3d 1163, 1187 (10th Cir. 2007); *Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1019 (D.C. Cir. 2003); *Maine v. U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 19–20 (1st Cir. 2001); *Jenksin ex rel. Jenkins v. Missouri*, 78 F.3d 1270, 1275 (8th Cir. 1996); *Meyer Goldberg, Inc. of Lorain v. Goldberg*, 717 F.2d 290, 292 (6th Cir. 1983). We therefore join those courts in adopting such a framework for this case. To merit intervention as of right, PCFFA has the burden to make a compelling showing that its interests may not be adequately protected by the government insofar as there are aspects of the case that

the government might not—or might not be able to—pursue to their fullest. In addition, PCFFA must overcome the presumption that the government as sovereign adequately represents the interest of citizens concerning matters that invoke "sovereign interests." *See Standard Heating & Air Conditioning Co. v. City of Minneapolis*, 137 F.3d 567, 572 (8th Cir. 1998).

In its briefing and argument, PCFFA alleges two categories of interests implicated by Wolfsen's claim.

1

First, PCFFA argues that the Court of Federal Claims, in adjudicating Wolfsen's claim, might render some ruling making robust implementation of the Litigation Settlement either practically or totally impossible. In this case Wolfsen alleges, *inter alia*, a legal right to some of the water the government released. We perceive no dispute that a judicial order to that effect, if made, would complicate the government's plans to release water past Friant Dam. If Wolfsen has a protectable interest in the released water, PCFFA reasons that so might other nearby landowners. The government could find itself unable to release water in the quantities necessary to effectuate the goals of the Litigation Settlement (e.g., ecological restoration) without rights from these unnamed persons, some of whom might be unwilling to sell at a reasonable price. PCFFA further points out that both the Litigation Settlement and the Settlement Act bar the government from using eminent domain to acquire water rights for the releases. *See* Litigation Settlement ¶ 13 (stating that the government shall acquire water rights from willing sellers); Settlement Act § 10004(a)(3) (authorizing acquisition of water rights provided that "such acquisitions shall only be made from willing sellers and not through eminent domain"). PCFFA expresses concern

that the government might conduct itself in such a way as to technically comply with the Litigation Settlement, while undermining its substance and frustrating its goals.

These concerns do not demonstrate any cognizable reason why PCFFA's participation in this case is, or even may be, necessary. As to this case, the government and PCFFA have precisely the same motivation, which is to see Wolfsen's claim fail, for as many reasons as possible. It is, after all, the government who would be liable for money damages if Wolfsen's claim succeeds. And even if PCFFA's fears are realized, and Wolfsen's claim is confirmed, it is the government that would be caught between the rights of landowners and the terms of the settlement. We cannot see—and PCFFA has not shown—any reason why the government would not defend against Wolfsen's claim to the utmost, just as PCFFA would do were it a party.

PCFFA's arguments to the contrary are unavailing. While acknowledging that it and the government share a litigation goal—defeat of Wolfsen's claim—PCFFA argues that any presumption of adequate representation is rebutted by its history of litigation against the government concerning Friant Dam. PCFFA argues that the government was "recalcitrant" during that litigation and refused to accept the validity of PCFFA's arguments. "But for [PCFFA's] litigation," it argues, "the United States would never have commenced the water releases over which the Wolfsen Plaintiff's now sue." *Id.* at 39. PCFFA also urges that the government departs from PCFFA's interests in two respects: first, the government wants to avoid financial liabilities that PCFFA does not face, and second, the government as sovereign must implement the Settlement Act "in a way that is responsive to an array of competing concerns," while PCFFA does not share that duty.

But even if we accept all these assertions, they do not convey any reason to expect that this litigation would proceed differently with PCFFA as a party than without. Neither its past litigation history, its financial stake in this case, nor its obligations as sovereign make the government any less motivated to contest Wolfsen's claim than PCFFA is. PCFFA has shown no argument that the government would leave aside but PCFFA would not, or any reason to believe the government would be unwilling to pursue some theory that PCFFA would pursue in order to defeat Wolfsen's claim. Because it can show no divergence in either motivations or approaches between itself and the government as to this case, PCFFA has also failed to overcome the presumption that the government as sovereign can adequately represent its interests. It cites cases in which the government's preferred outcome for a case differed (or might differ) from that of the intervenor. *See generally South Dakota v. Ubbelohde*, 330 F.3d 1014, 1025 (8th Cir. 2003); *Sierra Club v. Espy*, 19 F.3d 1202, 1208 (5th Cir. 1994). As already discussed, that is not the case here. We cannot see how the government would prefer Wolfsen to prevail (and to take money damages) in whole or in part. The government's goal matches PCFFA's goal identically.

This case illustrates why entry into a case is presumptively barred for an intervenor whose specific litigation goals identically match those of an existing party. PCFFA has not demonstrated that its participation could add some material aspect to the case beyond what is already present. In such circumstances, denial of intervention will conserve scarce judicial resources with no danger to the movant's legal rights or interests. We of course do not suggest that the government must always be viewed an as adequate spokesman for an interested private litigant. Whether such is so in a given case de-

pends on the facts of the case. Here, PCFFA has not yet shown anything that it would add in defense of the suit beyond what the government will offer.

2

PCFFA also identifies a second danger posed by the Wolfsen lawsuit. PCFFA worries that the case might provoke a private settlement that affects the government's ability to fully meet the requirements of the Litigation Settlement and Settlement Act. But even assuming arguendo that a Wolfsen settlement could affect PCFFA's rights or interests in the water releases contemplated by its own settlement, such a concern does not support PCFFA's argument for intervention at this time.

PCFFA's specific concern is that in order to achieve settlement the government might bind itself to either not release further water from Friant Dam or to reclassify released water in such a way as to frustrate the goals of the Litigation Settlement.

PCFFA acknowledges that intervention, even if granted, would not bestow on it any authority over the settlement negotiations, or to force the inclusion or exclusion of any specific terms. PCFFA argues that it should be allowed to intervene so that in the event Wolfsen or the government moved for express judicial approval of their settlement (e.g., as a consent decree), PCFFA could review the motion and voice any concerns to the court.[1] PCFFA acknowledges that it would have no right to veto such a

---

[1] At oral argument, Wolfsen asked whether that the Court of Federal Claims, as a tribunal of limited jurisdiction and authority, would even possess the power to enter a consent order purporting to retain jurisdiction over the settling parties' future conduct. This question, while thought-provoking, is speculative as to this appeal, and we decline to opine on it.

settlement, only to raise objections. *Local No. 93, International Association of Firefighters v. City of Cleveland*, 478 U.S. 501, 528–29 (1986). PCFFA also argues that, if it were allowed to intervene, it could argue that the court should disapprove the settlement and refuse to dismiss. *See* Fed. Cl. R. 41(a) (stating that if dismissal is not stipulated to by "all parties who have appeared," "an action may be dismissed . . . only by court order, on terms that the court considers proper"). But these concerns are at this point speculative and cannot justify intervention unless and until there is such a settlement.

PCFFA also argues that it should be permitted to intervene now so that it would receive early warning of what it might consider a bad settlement in this case. But, like the Court of Federal Claims, we conclude that this desire is insufficient to create a right of intervention under Rule 24(a).

We also note that by this appeal Wolfsen, the government, the Court of Federal Claims, and this court have all been apprised that any settlement seeming to impair full performance of the Litigation Settlement is likely to engender further litigation. In that light, we assume the parties will apprise PCFFA of any pending settlement implicating future releases of water past Friant Dam or the ecological goals that were at stake in the district court litigation.

Finally, we read the Court of Federal Claims' denial of intervention as entered without prejudice to a possible future motion. Should a proposed settlement reveal some basis for arguing that the government may not adequately represent some PCFFA interest, PCFFA can seek to intervene at that time, and the Court of Federal Claims can then determine whether PCFFA meets the tests for

intervention as of right. We express no view on the merits of any such later motion to intervene as of right.

## IV

For the reasons stated above, the judgment of the Court of Federal Claims is affirmed.

**AFFIRMED**

# United States Court of Appeals for the Federal Circuit

———————————————

**WOLFSEN LAND & CATTLE COMPANY,
TURNER ISLAND FARMS, INC., WEST TURNER
ISLAND RANCH, LONE WILLOW RANCH,
DONALD C. SKINNER, LYNN W. SKINNER,
LAWRENCE SCOTT SKINNER, THOMAS CLAY
SKINNER,LAUREL LYNN SKINNER, STACIE L.
SKINNER-HANSON, LAWRENCE JOHN WOLFSEN,
MEW VENTURES, ROBERT MUELLER,** AND
**JOANNE MUELLER,**
*Plaintiffs-Appellees,*

v.

**PACIFIC COAST FEDERATION OF FISHERMEN'S
ASSOCIATIONS,**
*Movant-Appellant,*

AND

**NATURAL RESOURCES DEFENSE COUNCIL,**
*Movant-Appellant,*

v.

**UNITED STATES,**
*Defendant.*

———————————————

2011-5113

———————————————

Appeal from the United States Court of Federal Claims in case no. 10-CV-580, *Chief Judge* Emily C. Hewitt.

———————————

REYNA, *Circuit Judge*, concurring.

I concur that the district court did not err in denying PCFFA's motion to intervene as a matter of right. I write separately because I do not agree that the United States—which opposed PCFFA for years in related litigation—can be presumed to adequately represent PCFFA in this case.

## I.  The Majority Creates an Artificial Bar for Intervention

The majority correctly starts from the principles that we construe Rule 24 in favor of intervention and that the burden of showing inadequacy of representation is minimal. Majority Op. at 7. However, the opinion steadily distances itself from these principles, and fails to return to them in the final analysis. Instead, the opinion adopts a presumption that representation is adequate when an existing party "shares the same ultimate objective," and that this presumption can only be overcome by "a 'compelling showing' of inadequacy of representation." Majority Op. at 9. Ultimately, the majority concludes that "entry into a case is presumptively barred for an intervenor whose specific litigation goals identically match those of an existing party." Majority Op. at 12.

I agree that the Ninth Circuit did employ a "compelling showing" standard in *Citizens for Balanced Use v. Montana Wilderness Association.* 647 F.3d 893, 898 (9th Cir. 2011). But, our opinion today relies on a belief that the burden imposed by that standard is quite high. It is

not. Indeed, a high burden would be contrary to Supreme Court precedent, as well as the general principle that intervention is favored. *See Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) ("[Rule 24] is satisfied if an applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."); *American Mar. Transp., Inc. v. United States*, 870 F.2d 1559, 1561 (Fed. Cir. 1989) (noting that "the requirements [of Rule 24] are to be construed in favor of intervention" but concluding that Rule 24 could not be satisfied by indirect and contingent interests).

Consistent with *Trbovich*'s statement that the burden of showing inadequacy of representation is "minimal," the circuit courts that have applied this presumption have not—despite the "compelling showing" language—held prospective intervenors to a very high burden. For example, although the intervenor in *Citizens for Balanced Use* was able to overcome the presumption of adequate representation by showing that the U.S. Forest Service was actively opposing the intervenor on the same interests in a separate appeal, the court gave examples of several cases where it had "concluded that the 'inadequacy of representation' prong was met in analogous factual circumstances on *substantially weaker showings*." 647 F.3d at 899 (emphasis added). These showings were quite similar to the facts of the instant case. Similarly, in *Maine v. U.S. Fish & Wildlife Service*, the court recognized that "there is danger in a mechanistic application" of the presumption, and that "'[p]resumption' means no more in this context than calling for an adequate explanation as to why what is assumed—here, adequate representation—is not so." 262 F.3d 13, 19 (1st Cir. 2001).

The compelling showing standard adopted by the majority makes it more difficult for parties to intervene and

presents an effective bar to intervention in many cases. However, the opinion does not mention or discuss how the cases from which this compelling showing requirement was drawn have tempered that language. And although the majority begins with the more deferential standard from *Trbovich*, it ends with the exclusionary language— not previously used by any court, and more demanding than the cases the opinion relies upon—that intervenors are "presumptively barred" when an existing party shares identical "litigation goals." I disagree with this result, which will lock out litigants who deserve their day in court.

Additionally, the majority employs a presumption that the government adequately represents the interests of citizens concerning matters that invoke sovereign interests to summarily dismiss PCFFA's argument that the government must balance multiple competing interests. Majority Op. at 12. But the majority does not identify what government interest is the sovereign interest in this case, nor does it identify PCFFA's interests. Instead, it concentrates on whether Wolfsen will prevail in its suit to obtain a money judgment. At best, the majority has confused litigation goals with legal interests; at worst, it has unnecessarily introduced a new presumption into our cases, raising an additional bar against intervention in cases in which the government is a party.

## II.  Litigation Goals Versus Legal Interests

Rule 24(a)(2) allows parties to intervene if they have an interest in the subject of the action. The majority has confused the distinction between a party's legal interests in the subject of an action (which the majority also refers to as "motivations") and a party's litigation goals in the prosecution or defense of an action. But the distinction is critical. As *Citizens for Balanced Use* recognized, the

most important factor in assessing adequacy of representation is the parties' interests.  647 F.3d at 898.  In *Trbovich*, the interests were enforcing union member rights and protecting the public's interest in assuring free and democratic union elections.  In *Citizens for Balanced Use*, the intervenor's interest was in preserving the wildlife character of a forest.  Here, PCFFA's interest is in ecological conservation, as well as any legal interest it obtained in the water by virtue of the settlement.

Litigation goals are an entirely separate concept. PCFFA's litigation goal, as well as that of the United States, is to defeat Wolfsen and win the lawsuit.  In other contexts, litigations goals are tactical, i.e., advancing certain arguments or winning specific motions.  The cases have generally observed that differing litigation goals do not rise to the level of inadequate representation.  *See, e.g.*, *Citizens for Balanced Use*, 647 F.3d at 899 (distinguishing parties' ultimate objectives from their litigation goals); *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (same).

Given that differing interests render representation inadequate but differing litigation goals may not, it is important to analyze these two related concepts with care. The majority opinion fails to accomplish this.  The majority finds that two categories of interests are implicated. Majority Op. at 10.  The first of these is PCFFA's interest in enforcing the settlement.  In rejecting PCFFA's contention that the Untied States will not adequately represent its interests with respect to the settlement, the majority asserts that "the government and PCFFA have precisely the same motivation, which is to see Wolfsen's claim fail, for as many reasons as possible."  Majority Op. at 11. This does not describe a legal interest as contemplated by Rule 24, but rather a litigation goal as determined in the parties' tactical room.  In fact, the majority devotes sig-

nificant effort to setting forth in detail how PCFFA's interests differ from those of the government. But the majority opinion dismisses those differences because they do not "make the government any less motivated to contest Wolfsen's claim than PCFFA is." Majority Op. at 12. This analysis demonstrates the majority's confusion of a litigation goal—defeating Wolfsen—with the interests of the parties.

The second interest identified by the majority is PCFFA's concern that the parties might reach a settlement that adversely affects its interests. To the extent that this interest implicates adequacy of representation, there is no escaping that in the previous eighteen years of litigation, the government and PCFFA have had different interests, even if they now share a goal to comply and to enforce compliance with the settlement. The majority, however, ignores the years of contentious litigation between PCFFA and the government, apparently under the presumption that the interests evaporated when the settlement was reached. It is unreasonable to believe that any settlement between Wolfsen and the government would necessarily safeguard or advance PCFFA's interest. Although PCFFA could not as a party in this case prevent the government from settling with Wolfsen, and although PCFFA's remedy to any breach of the settlement might best be obtained in another suit, limited intervention would allow PCFFA to alert the court to any aspects of a proposed settlement that are inconsistent with the Settlement Agreement or Settlement Act and its interests.

The majority recognizes that the settlement agreement requires the government to balance competing goals, but reasons that the government will adequately represent PCFFA because both parties desire Wolfsen's defeat. It therefore concludes that "[s]hould a proposed settlement reveal some basis for arguing that the gov-

ernment may not adequately represent some PCFFA interest, PCFFA can seek to intervene at that time . . . ." Majority Op. at 14. By its own terms, this statement recognizes that the association's interests may not be adequately represented by the government. That is all that Rule 24 requires.

## III. Immediacy of Interest and Impairment

The nature of PCFFA's interests, as well as any impairment to those interests, is addressed by the second and third prongs of Rule 24(a), which collectively provide a more appropriate way to resolve this case. Approaching the prongs in the order presented by Rule 24 is more analytically clear and I believe it to be the only correct way to proceed with a right to intervene analysis.

The second prong of Rule 24(a) requires the court to identify PCFFA's interests in this case.[1] An examination of PCFFA's interests in upholding the settlement reveals two separate and potentially conflicting goals: restoring and maintaining fish populations (the "restoration goal") and reducing or avoiding adverse water supply impacts that may result from releases of water dictated by the settlement (the "water management goal"). Identifying the nature of PCFFA's legal interests under Rule 24(a) places the discussion under prongs three and four of whether PCFFA's interests are speculative and whether the government's representation is adequate in its proper context.

The third prong requires the court to determine whether the interests identified in prong two will be directly and immediately impaired by the outcome of the case. PCFFA's interests would have been directly impli-

---

[1] There is no dispute that the first prong, timeliness of the motion, is satisfied.

cated had Wolfsen filed suit to enjoin the government from releasing water. But it is less clear that PCFFA's interests in either the restoration goal or the water management goal will be directly impaired if the government is exposed only to a money judgment. Given that Congress has required the government to implement the settlement agreement, a conclusion that the prospects of a money judgment would make the government less likely to release water according to the terms of the agreement would be speculation. Similarly, the argument that a money judgment would cause other parties to file similar suits in the future, thus increasing the likelihood that the government would decide not to release water in order to avoid payouts, is hypothetical. Because I believe that any impairment to PCFFA's interests is simply too speculative to support intervention, *see Am. Mar. Transp.*, 870 F.2d at 1561, I agree that the correct result is to affirm the Court of Federal Claims.