**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CITIZENS FOR BALANCED USE,
           *Plaintiff-Appellee,*

v.

MONTANA WILDERNESS
ASSOCIATION; GREATER
YELLOWSTONE COALITION; THE
WILDERNESS SOCIETY,
     *Applicants-in-intervention-*
             *Appellants,*

and

MARY ERICKSON, Gallatin National
Forest Supervisor; UNITED STATES
FOREST SERVICE,
            *Defendants.*

No. 10-35823

D.C. No.
2:10-cv-00017-SEH

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted
June 7, 2011—Portland, Oregon

Filed July 26, 2011

Before: Raymond C. Fisher, Ronald M. Gould, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Gould

9543

**COUNSEL**

Douglas L. Honnold, Timothy J. Preso, Sean M. Helle (argued), and Jenny K. Harbine, Earthjustice, Bozeman, Montana, for applicants-in-intervention-appellants Montana Wil-

derness Association, Greater Yellowstone Coalition, and The Wilderness Society.

Catherine A. Laughner, Mary Christina Surr McCann, and Kyle W. Nelson (argued), Browning, Kaleczyc, Berry & Hoven, P.C., Bozeman, Montana, for plaintiff-appellee Citizens for Balanced Use.

## OPINION

GOULD, Circuit Judge:

Three conservation groups, Montana Wilderness Association, Greater Yellowstone Coalition, and The Wilderness Society (collectively, "Applicants") appeal from the denial of their motion to intervene on the side of the defendants in an action brought by Citizens for Balanced Use ("CBU") against Mary Erickson, in her official capacity as Supervisor of the Gallatin National Forest, and the United States Forest Service ("Forest Service"). In the underlying action, CBU challenged an interim order issued by the Forest Service in response to an adverse decision in prior litigation brought by Applicants. That interim order, which is the subject of this litigation, restricted motorized and mechanized vehicle use in a section of the Gallatin National Forest. CBU alleged that the challenged interim order violated the Montana Wilderness Study Act of 1977 ("MWSA") and the Administrative Procedure Act ("APA") because it unduly restricted the use or possession of snowmobiles, tracked ATVs, and other over-snow vehicles. Because we conclude that Applicants satisfied the four requirements for intervention as of right under Federal Rule of Civil Procedure 24(a), we reverse and remand with instructions that the district court allow Applicants to intervene and become parties to the ongoing litigation, and that the district court take reasonable steps to put Applicants on equal footing with the original parties so as to ensure their opportunity for participation.

# I

The Gallatin National Forest, in southwest Montana, contains within its boundaries the Hyalite-Porcupine-Buffalo Horn Wilderness Study Area ("Study Area"), made up of 155,000 acres of public lands established by the Montana Wilderness Study Act of 1977, Pub. L. No. 95-150, 91 Stat. 1243. The MWSA requires the Secretary of Agriculture to administer the Study Area so as to "maintain [its] presently existing wilderness character [as of 1977] and potential for inclusion in the National Wilderness Preservation System." MWSA § 3(a), 91 Stat. 1243.

In October 2006, after several years of environmental analysis, public review, and public comment, the Forest Service issued the Travel Management Plan ("Plan"), along with a Final Environmental Impact Statement, to manage travel and recreation within the Study Area. Three conservation groups —the same groups that are the applicants for intervention in this case, namely Montana Wilderness Association, Greater Yellowstone Coalition, and the Wilderness Society—filed an action in March 2007 to challenge the Plan under the APA on the theory that the Plan permitted increased motorized and mechanized activity in the Study Area in violation of the MWSA and the National Environmental Policy Act ("NEPA"). *See Mont. Wilderness Ass'n v. McAllister*, 658 F. Supp. 2d 1249 (D. Mont. 2009). CBU,[1] with several other recreational use advocacy groups, also filed suit against the Forest Service to challenge the Plan, but, unlike the conservation groups, it asserted that the Plan was overly restrictive of motorized and mechanized recreational activity in violation of the MWSA. The two separate challenges to the Plan were consolidated. In September 2009, the district court in the con-

---

[1]CBU, a membership organization based in Bozeman, Montana, seeks to preserve and enhance recreational access opportunities, including the use of snowmobiles, tracked ATVs, and other over-snow vehicles, on public lands such as the Study Area.

solidated action granted summary judgement to the conservation plaintiffs (Applicants in this case) based on its conclusion that the Plan was arbitrary and capricious and violated the MWSA and NEPA; enjoined the continued implementation of the Plan; and remanded to the agency for further proceedings consistent with its ruling. *See id.* at 1256, 1266. The Forest Service appealed the district court's grant of summary judgment for the conservation plaintiffs (Applicants), and that appeal is currently pending before this court.

In November 2009, in response to the district court's ruling, the Forest Service announced an interim management strategy for the Study Area, made effective by an Interim Order, which further limited snowmobile and other motorized and mechanized use.[2] In April 2010, CBU initiated this action against the Forest Service to challenge the Interim Order. CBU claimed that the Interim Order violated the MWSA and the APA because it restricts motorized and mechanized vehicle use in areas that were open to such use in 1977. Ten days after the Forest Service filed its answer in CBU's new action, Applicants filed a motion to intervene as of right under Rule 24(a)(2), or, in the alternative to intervene in the court's discretion under Rule 24(b). CBU opposed the motion. The district court denied the motion. Applicants timely appealed the district court's denial of their motion seeking intervention as of right or permissive intervention.

## II

We have jurisdiction over the denial of a motion to intervene as of right as a final appealable order under 28 U.S.C. § 1291. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 814 (9th Cir. 2001). We review the denial of a motion

---

[2]A news release issued by the Gallatin National Forest explained: "The interim strategy constrains snowmobile use in the [Study Area] to the Big Sky Snowmobile Trail and an open area for cross country snowmobile travel . . . near Golden Trout Lakes and west of Windy Pass."

to intervene as of right de novo, with the exception of the timeliness prong, which we review for abuse of discretion.[3] *Id.* at 817.

We have jurisdiction over the denial of a motion for permissive intervention only if we determine that the district court abused its discretion. *League of United Latin Am. Citizens v. Wilson ("LULAC")*, 131 F.3d 1297, 1307-08 (9th Cir. 1997); *see also Freedom From Religion Found., Inc. v. Geithner*, ___ F.3d ___, No. 09-17753, 2011 WL 1746137, at *4 (9th Cir. May 9, 2011) (stating that we review the denial of a motion for permissive intervention for abuse of discretion). We need not reach the issue of permissive intervention if we determine that intervention as of right was improperly denied. *United States v. City of L.A.*, 288 F.3d 391, 398 (9th Cir. 2002) ("We reverse as to intervention as of right, and we therefore do not consider whether the [applicant] was entitled to intervene permissively.").

### III

Federal Rule of Civil Procedure 24(a)(2) states:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

**[1]** An applicant seeking to intervene as of right under Rule 24 must demonstrate that four requirements are met: "(1) the intervention application is timely; (2) the applicant has a

---

[3]Here, the district court did not make any findings on timeliness or rest its decision to deny intervention on a failure of Applicants to satisfy that prong, and CBU does not contest that the motion to intervene was timely.

significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (internal quotation marks and citation omitted); *see also Berg*, 268 F.3d at 817. While an applicant seeking to intervene has the burden to show that these four elements are met, the requirements are broadly interpreted in favor of intervention. *Prete*, 438 F.3d at 954. "In addition to mandating broad construction, our review is guided primarily by practical considerations, not technical distinctions." *Berg*, 268 F.3d at 818 (internal quotation marks and citation omitted).

**[2]** CBU concedes that Applicants meet the first three elements of the test for intervention as of right and urge that intervention was properly denied solely on the basis that Applicants did not show that the Forest Service may not adequately represent their interest. We agree with the parties that Applicants meet the first three requirements for intervention as of right. Those requirements, while not now disputed, merit brief discussion because they are part of the setting in which we examine the disputed issue.

With respect to the first requirement, Applicants filed their motion to intervene in a timely manner, less than three months after the complaint was filed and less than two weeks after the Forest Service filed its answer to the complaint. The motion to intervene was made at an early stage of the proceedings, the parties would not have suffered prejudice from the grant of intervention at that early stage, and intervention would not cause disruption or delay in the proceedings. These are traditional features of a timely motion. *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996).

Second, Applicants have a significant protectable interest in the action. "Whether an applicant for intervention as of right

demonstrates sufficient interest in an action is a 'practical, threshold inquiry,' and '[n]o specific legal or equitable interest need be established.' " *Id.* at 837 (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993)). To demonstrate a significant protectable interest, an applicant must establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue. *Id.* As CBU concedes, Applicants have a significant protectable interest in conserving and enjoying the wilderness character of the Study Area, which rests on the provisions of the MWSA invoked in this case. *See, e.g., United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008) (explaining that a prior opinion made clear that wilderness conservation groups "were entitled to intervene because they had the requisite interest in seeing that the wilderness area be preserved for the use and enjoyment of their members"); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (holding that the National Audubon Society had the right to intervene in a suit challenging the actions of the Interior Secretary in connection with the development of a bird conservation area based on the Audubon Society's interest in the preservation of birds and their habitats). Applicants have satisfied the second requirement for intervention as of right given their interest in preserving wilderness character within the Study Area.

Third, the disposition of this action may, as a practical matter, impair or impede Applicants' ability to protect their interest. "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . ." Fed. R. Civ. P. 24 advisory committee's note; *see also Berg*, 268 F.3d at 822 ("We follow the guidance of Rule 24 advisory committee notes . . . ."). Under similar circumstances, "[h]aving found that appellants have a significant protectable interest, [this court had] little difficulty concluding that the disposition of th[e] case may, as a practical matter, affect it." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442

(9th Cir. 2006). If CBU prevails in this case and succeeds in enjoining enforcement of the restrictions of the Interim Order that limit motorized and mechanized use in the Study Area, Applicants' interest in conserving and enjoying wilderness in the Study Area may, as a practical matter, be impaired.

[3] This brings us to the parties' principal dispute on the question of whether Applicants meet the fourth and final requirement for intervention as of right: that the existing parties may not adequately represent the applicant's interest. The burden of showing inadequacy of representation is "minimal" and satisfied if the applicant can demonstrate that representation of its interests "may be" inadequate. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). In evaluating adequacy of representation, we examine three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.* The "most important factor" in assessing the adequacy of representation is "how the interest compares with the interests of existing parties." *Id.* If an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises. *LULAC*, 131 F.3d at 1305. To rebut the presumption, an applicant must make a "compelling showing" of inadequacy of representation. *Arakaki*, 324 F.3d at 1086. "There is also an assumption of adequacy when the government is acting on behalf of a constituency that it represents," which must be rebutted with a compelling showing. *Id.*

[4] CBU's central contention is that intervention as of right was properly denied because Applicants did not make a sufficient showing that the Forest Service's representation may be inadequate. CBU argues that Applicants and the Forest Service share the same ultimate objective—that of upholding the validity of the Interim Order—and that this gives rise to a pre-

sumption of adequacy of representation. Applicants respond that there is no such alignment of objectives because the Forest Service implemented the Interim Order only to comply with the earlier district court decision, a decision that the Forest Service now seeks to overturn on appeal. Applicants further contend that the Forest Service will defend the Interim Order by asserting that the recreational use restrictions were required by the outcome of the prior litigation and not by the MWSA's mandate that the Forest Service "maintain" the Study Area's wilderness character.

[5] We agree with Applicants and reject CBU's contention that the Forest Service's and Applicants' ultimate objectives are identical where the Forest Service acted under compulsion of a district court decision gained by Applicants' previous litigation, and where the Forest Service is simultaneously appealing the decision that led them to adopt the now-challenged Interim Order. Applicants and the Forest Service have distinct interests and objectives in that Applicants wish to defend the Interim Order as containing the kind of restrictions that are statutorily mandated by the MWSA to protect wilderness character, while the Forest Service may assert only that the Interim Order was compelled by the prior district court decision, which the Forest Service is also seeking to overturn.[4] Applicants seek to secure the broadest possible restrictions on recreational uses in the Study Area to protect its interest in the wilderness character, while the Forest Service has made clear its position that, while the Interim Order does not violate the MWSA, much narrower restrictions would suffice to comply with its statutory mandate. This represents more than a mere difference in litigation strategy, which might not normally justify intervention, but rather demonstrates the fundamentally differing points of view between

---

[4]Indeed, if the Forest Service succeeds in reversing or vacating the prior district court ruling on its appeal, the Forest Service predictably may change its litigation position or even abandon the defense of the Interim Order and withdraw it.

Applicants and the Forest Service on the litigation as a whole. *See California ex rel. Lockyer*, 450 F.3d at 444-45. As one of our sister circuits has persuasively explained, the government's representation of the public interest may not be "identical to the individual parochial interest" of a particular group just because "both entities occupy the same posture in the litigation." *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009) (quoting *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1256 (10th Cir. 2001)).

Even assuming that the Forest Service and Applicants share the objective of defending the legality of the Interim Order, Applicants have made a "compelling showing" of inadequate representation as required to permit intervention where there is such a unity of objectives. Applicants assert that the Forest Service may not adequately represent their interest in conserving and enjoying wilderness character in the Study Area because (1) the Forest Service reluctantly adopted the restrictions on motorized use in the Interim Order—restrictions that are favorable to Applicants' interests—in response to successful litigation the Applicants themselves brought, and (2) the Forest Service now seeks to overturn on appeal the very court decision that forced it to adopt the Interim Order. This showing is compelling.

We have concluded that the "inadequacy of representation" prong was met in analogous factual circumstances on substantially weaker showings. In *County of Fresno v. Andrus*, 622 F.2d 436 (9th Cir. 1980), for example, the district court denied a motion for intervention as of right filed by the organization National Land for People, Inc. ("NLP") in an action brought by the County of Fresno to enjoin the Secretary of the Department of the Interior from promulgating regulations governing excess land sales until an environmental impact statement was prepared. *Id.* at 437. NLP had previously brought an action and obtained a preliminary injunction to compel the Secretary to initiate rulemaking proceedings. *Id.* We held that the Department of the Interior did not adequately

represent NLP's interest because the Department did not appeal the district court's grant of a preliminary injunction, as NLP would have done, and because there was "further reason to doubt that the Department will fully protect NLP's interest . . . in light of the fact that the Department began its rulemaking only reluctantly after NLP brought a law suit against it." *Id.* at 439.

Similarly, in *Idaho Farm Bureau Federation v. Babbitt*, 58 F.3d 1392 (9th Cir. 1995), we affirmed the district court's decision granting intervention as of right under Rule 24(a) to a conservation organization on the side of the United States Fish and Wildlife Service ("FWS") to defend a final rule listing a particular species of snail as an endangered species. *Id.* at 1395. We concluded that the FWS may have inadequately represented the interests of the conservation organization because:

> FWS delayed its decision on the listing proposal for years and took action only after [intervenor] filed suit to compel FWS to make a decision. FWS was unlikely to make strong arguments in support of its own actions considering that it proceeded to make a decision largely to fulfill the settlement agreement in the suit [intervenor] filed. Furthermore, FWS was unlikely to argue on behalf of [intervenor], the very organizations that compelled FWS to make a final decision by filing a lawsuit.

*Id.* at 1398.

**[6]** Like the government defendants in each of these cases, the Forest Service issued the Interim Order at issue here only reluctantly in response to successful litigation by Applicants. In light of *County of Fresno* and *Babbitt*, this fact alone demonstrates that the Forest Service may not put forth as strong of an argument in defense of the Interim Order—particularly the argument that the order's restrictions are mandated by the

MWSA and not just by the district court's order—because the Forest Service earlier opposed Applicants in their efforts to secure the restrictions. That the Forest Service has appealed the decision of the district court that compelled it to issue the Interim Order adds substantial weight to Applicants' position that the Forest Service may be unable or unwilling to pursue vigorously all available arguments in support of the Applicants' interest. Based on the relevant precedent and the peculiar circumstances of this case, there is sufficient reason to doubt the adequacy of the Forest Service's representation of Applicants' interest so as to warrant intervention as of right by Applicants. *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972).

**[7]** We stress that intervention of right does not require an absolute certainty that a party's interests will be impaired or that existing parties will not adequately represent its interests. Rule 24(a) is invoked when the disposition of the action "may" practically impair a party's ability to protect their interest in the subject matter of the litigation, "unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Rule 24(a) has been interpreted to mean that a party whose interests are threatened may intervene in an action to protect those interests directly if the existing parties may not adequately protect their interests. *See Trbovich*, 404 U.S. at 538 n.10 ("The requirement . . . is satisfied if the applicant shows that representation of his interest 'may be' inadequate . . . ."). Given the Forest Service's prior litigation position adverse to Applicants, the Forest Service's appeal of the district court ruling that enjoined the Travel Management Plan, and the fact that the Forest Service issued the Interim Order challenged here in response to that very same adverse ruling, we cannot conclude that the Forest Service will undoubtedly make all of Applicants' arguments, nor can we be assured that the Forest Service is capable of making and willing to make such arguments. Even if we applied a presumption of adequate representation, that presumption was persuasively rebutted by Applicants' presentation.

**[8]** Applicants satisfied all four requirements for intervention as of right, and the denial of their motion was therefore in error. Because we reverse the district court's denial of intervention as of right, we need not reach the issue of whether the district court abused its discretion in denying permissive intervention. *See City of L.A.*, 288 F.3d at 398.

## IV

**[9]** Applicants showed, in a timely-filed motion, that they have a significant protectable interest in this action, that the disposition may impair their ability to protect that interest, and that the Forest Service may not adequately represent their interest. Applicants are entitled to intervene under Rule 24(a). We reverse and remand with instructions that Applicants be made parties to the litigation and that the district court promptly "take all reasonable steps to put the new parties on equal footing with the original parties." *California ex rel. Lockyer*, 450 F.3d at 445. Because the district court may soon rule on dispositive motions that could affect Applicants' interests, time is of the essence; the clerk is instructed to issue the mandate forthwith. *See id.*

**REVERSED AND REMANDED.**