REYNA, Circuit Judge,
concurring.
I concur that the district court did not err in denying PCFFA’s motion to intervene as a matter of right. I write separately because I do not agree that the United States — which opposed PCFFA for years in related litigation — can be presumed to adequately represent PCFFA in this case.
I. The Majority Creates an Artificial Bar for Intervention
The majority correctly starts from the principles that we construe Rule 24 in favor of intervention and that the burden of showing inadequacy of representation is minimal. Majority Op. at 1315. However, the opinion steadily distances itself from these principles, and fails to return to them in the final analysis. Instead, the opinion adopts a presumption that representation is adequate when an existing party “shares the same ultimate objective,” and that this presumption can only be overcome by “a ‘compelling showing’ of inadequacy of representation.” Majority Op. at 1316. Ultimately, the majority concludes that “entry into a case is presumptively barred for an intervenor whose specific litigation goals identically match those of an existing party.” Majority Op. at 1318.
I agree that the Ninth Circuit did employ a “compelling showing” standard in Citizens for Balanced Use v. Montana Wilderness Association. 647 F.3d 893, 898 (9th Cir.2011). But, our opinion today relies on a belief that the burden imposed by that standard is quite high. It is not. Indeed, a high burden would be contrary to Supreme Court precedent, as well as the general principle that intervention is favored. See Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972) (“[Rule 24] is satisfied if an applicant shows that representation of his interest ‘may be’ inadequate; and the burden of making that showing should be treated as minimal.”); American Mar. Transp., Inc. v. United States, 870 F.2d 1559, 1561 (Fed.Cir.1989) (noting that “the requirements [of Rule 24] are to be construed in favor of intervention” but concluding that Rule 24 could not be satisfied by indirect and contingent interests).
Consistent with Trbovich’s statement that the burden of showing inadequacy of representation is “minimal,” the circuit courts that have applied this presumption have not — despite the “compelling showing” language — held prospective interve-nors to a very high burden. For example, although the intervenor in Citizens for *1320 Balanced Use was able to overcome the presumption of adequate representation by showing that the U.S. Forest Service was actively opposing the intervenor on the same interests in a separate appeal, the court gave examples of several cases where it had “concluded that the ‘inadequacy of representation’ prong was met in analogous factual circumstances on substantially weaker showings.” 647 F.3d at 899 (emphasis added). These showings were quite similar to the facts of the instant case. Similarly, in Maine v. U.S. Fish & Wildlife Service, the court recognized that “there is danger in a mechanistic application” of the presumption, and that “ ‘[p]resumption’ means no more in this context than calling for an adequate explanation as to why what is assumed— here, adequate representation — is not so.” 262 F.3d 13, 19 (1st Cir.2001).
The compelling showing standard adopted by the majority makes it more difficult for parties to intervene and presents an effective bar to intervention in many cases. However, the opinion does not mention or discuss how the cases from which this compelling showing requirement was drawn have tempered that language. And although the majority begins with the more deferential standard from Trbovich, it ends with the exclusionary language — not previously used by any court, and more demanding than the cases the opinion relies upon — that intervenors are “presumptively barred” when an existing party shares identical “litigation goals.” I disagree with this result, which will lock out litigants who deserve their day in court.
Additionally, the majority employs a presumption that the government adequately represents the interests of citizens concerning matters that invoke sovereign interests to summarily dismiss PCFFA’s argument that the government must balance multiple competing interests. Majority Op. at 1317-18. But the majority does not identify what government interest is the sovereign interest in this case, nor does it identify PCFFA’s interests. Instead, it concentrates on whether Wolfsen will prevail in its suit to obtain a money judgment. At best, the majority has confused litigation goals with legal interests; at worst, it has unnecessarily introduced a new presumption into our cases, raising an additional bar against intervention in cases in which the government is a party.
II. Litigation Goals Versus Legal Interests
Rule 24(a)(2) allows parties to intervene if they have an interest in the subject of the action. The majority has confused the distinction between a party’s legal interests in the subject of an action (which the majority also refers to as “motivations”) and a party’s litigation goals in the prosecution or defense of an action. But the distinction is critical. As Citizens for Balanced Use recognized, the most important factor in assessing adequacy of representation is the parties’ interests. 647 F.3d at 898. In Trbovich, the interests were enforcing union member rights and protecting the public’s interest in assuring free and democratic union elections. In Citizens for Balanced Use, the intervenor’s interest was in preserving the wildlife character of a forest. Here, PCFFA’s interest is in ecological conservation, as well as any legal interest it obtained in the water by virtue of the settlement.
Litigation goals are an entirely separate concept. PCFFA’s litigation goal, as well as that of the United States, is to defeat Wolfsen and win the lawsuit. In other contexts, litigations goals are tactical, i.e., advancing certain arguments or winning specific motions. The cases have generally observed that differing litigation goals do *1321 not rise to the level of inadequate representation. See, e.g., Citizens for Balanced Use, 647 F.3d at 899 (distinguishing parties’ ultimate objectives from their litigation goals); Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir.2003) (same).
Given that differing interests render representation inadequate but differing litigation goals may not, it is important to analyze these two related concepts with care. The majority opinion fails to accomplish this. The majority finds that two categories of interests are implicated. Majority Op. at 1316-17. The first of these is PCFFA’s interest in enforcing the settlement. In rejecting PCFFA’s contention that the Untied States will not adequately represent its interests with respect to the settlement, the majority asserts that “the government and PCFFA have precisely the same motivation, which is to see Wolfsen’s claim fail, for as many reasons as possible.” Majority Op. at 1317. This does not describe a legal interest as contemplated by Rule 24, but rather a litigation goal as determined in the parties’ tactical room. In fact, the majority devotes significant effort to setting forth in detail how PCFFA’s interests differ from those of the government. But the majority opinion dismisses those differences because they do not “make the government any less motivated to contest Wolfsen’s claim than PCFFA is.” Majority Op. at 1317. This analysis demonstrates the majority’s confusion of a litigation goal — defeating Wolfsen — with the interests of the parties.
The second interest identified by the majority is PCFFA’s concern that the parties might reach a settlement that adversely affects its interests. To the extent that this interest implicates adequacy of representation, there is no escaping that in the previous eighteen years of litigation, the government and PCFFA have had differ-
ent interests, even if they now share a goal to comply and to enforce compliance with the settlement. The majority, however, ignores the years of contentious litigation between PCFFA and the government, apparently under the presumption that the interests evaporated when the settlement was reached. It is unreasonable to believe that any settlement between Wolfsen and the government would necessarily safeguard or advance PCFFA’s interest. Although PCFFA could not as a party in this case prevent the government from settling with Wolfsen, and although PCFFA’s remedy to any breach of the settlement might best be obtained in another suit, limited intervention would allow PCFFA to alert the court to any aspects of a proposed settlement that are inconsistent with the Settlement Agreement or Settlement Act and its interests.
The majority recognizes that the settlement agreement requires the government to balance competing goals, but reasons that the government will adequately represent PCFFA because both parties desire Wolfsen’s defeat. It therefore concludes that “[s]hould a proposed settlement reveal some basis for arguing that the government may not adequately represent some PCFFA interest, PCFFA can seek to intervene at that time.... ” Majority Op. at 1319. By its own terms, this statement recognizes that the association’s interests may not be adequately represented by the government. That is all that Rule 24 requires.
III. Immediacy of Interest and Impairment
The nature of PCFFA’s interests, as well as any impairment to those interests, is addressed by the second and third prongs of Rule 24(a), which collectively provide a more appropriate way to resolve this case. Approaching the prongs in the *1322 order presented by Rule 24 is more analytically clear and I believe it to be the only correct way to proceed with a right to intervene analysis.
The second prong of Rule 24(a) requires the court to identify PCFFA’s interests in this case.[1] An examination of PCFFA’s interests in upholding the settlement reveals two separate and potentially conflicting goals: restoring and maintaining fish populations (the “restoration goal”) and reducing or avoiding adverse water supply impacts that may result from releases of water dictated by the settlement (the “water management goal”). Identifying the nature of PCFFA’s legal interests under Rule 24(a) places the discussion under prongs three and four of whether PCFFA’s interests are speculative and whether the government’s representation is adequate in its proper context.
The third prong requires the court to determine whether the interests identified in prong two will be directly and immediately impaired by the outcome of the case. PCFFA’s interests would have been directly implicated had Wolfsen filed suit to enjoin the government from releasing water. But it is less clear that PCFFA’s interests in either the restoration goal or the water management goal will be directly impaired if the government is exposed only to a money judgment. Given that Congress has required the government to implement the settlement agreement, a conclusion that the prospects of a money judgment would make the government less likely to release water according to the terms of the agreement would be speculation. Similarly, the argument that a money judgment would cause other parties to file similar suits in the future, thus increasing the likelihood that the government would decide not to release water in order to avoid payouts, is hypothetical. Because I believe that any impairment to PCFFA’s interests is simply too speculative to support intervention, see Am. Mar. Transp., 870 F.2d at 1561,1 agree that the correct result is to affirm the Court of Federal Claims.

. There is no dispute that the first prong, timeliness of the motion, is satisfied.