NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 6 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SEVAG CHALIAN; SIGFREDO CABRERA; ENKO TELAHUN; CHRISTINE MCNEELY, as individuals, on behalf of themselves, and all other persons similarly situated, <br><br>        Plaintiffs-Appellees, <br><br>   v. <br><br> CVS PHARMACY, INC, a Rhode Island corporation; CVS RX SERVICES, INC, a New York corporation; GARFIELD BEACH CVS, LLC, a California limited liability company, <br><br>        Defendants-Appellees, <br><br>   v. <br><br> RYAN HYAMS; REGINE DUHON, Proposed Intervenors, <br><br>        Movants-Appellants. | No.   20-55916 <br><br> D.C. No. <br> 2:16-cv-08979-AB-AGR <br><br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Andre Birotte, Jr., District Judge, Presiding

Argued and Submitted October 17, 2022

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: CHRISTEN, BUMATAY, and DESAI, Circuit Judges.
Dissent by Judge BUMATAY.

Ryan Hyams and Regine Duhon (Proposed Intervenors) appeal the district court's order denying their motions for mandatory and permissive intervention in an action brought pursuant to California's Private Attorneys General Act of 2004 (PAGA). Sevag Chalian and Sigfredo Cabrera originally brought separate actions against CVS Pharmacy, Inc., alleging various labor code violations, but they eventually consolidated their efforts and entered into settlement discussions with CVS. Hyams and Duhon were simultaneously litigating similar claims against CVS, and they sought to intervene in this consolidated action when they received notice of the proposed settlement. We have jurisdiction under 28 U.S.C. § 1291, and we reverse the district court's order denying intervention.

We review *de novo* a denial of a motion to intervene as of right, except for the timeliness prong, which we review for abuse of discretion. *Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015). We review an order denying a motion for permissive intervention for abuse of discretion. *Id.*

A nonparty is entitled to intervention as of right under Rule 24(a) of the Federal Rules of Civil Procedure when it: "(i) timely moves to intervene; (ii) has a significantly protectable interest related to the subject of the action; (iii) may have

2

that interest impaired by the disposition of the action; and (iv) will not be adequately represented by existing parties." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022) (quoting *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020)).  Each requirement must be satisfied. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).

Timeliness of Motion to Intervene.  The district court's ruling on the motion to intervene as of right did not expressly address timeliness.  We therefore consider this element *de novo*.  *Id.*  Untimeliness alone can be dispositive of a motion to intervene as a matter of right.  *See Orange County v. Air Cal.*, 799 F.2d 535, 537 (9th Cir. 1996).  In determining whether a motion for intervention is timely, the court considers three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay."  *Id.*  Of these factors, we have explained that prejudice is the most important consideration in deciding whether a motion for intervention is untimely. *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 857 (9th Cir. 2016).  That said, under our precedent, the only relevant prejudice is "that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented."  *W. Watersheds Project*, 22 F.4th at 838 (quoting *Smith*, 830 F.3d at 857).

Proposed Intervenors first learned of the *Chalian/Cabrera* cases in January

3

2019, when they prepared a joint case management statement with CVS in their separate action. At the time, the *Chalian/Cabrera* suit included several claims common to the *Hyams* suit,[1] but the *Hyams* suit asserted three PAGA claims the *Chalian/Cabrera* plaintiffs did not: violation of (1) the sick-days notice provision of California Labor Code § 246(i); (2) the rest-day provisions in California Labor Code §§ 551–552; and (3) the pharmacy-maximum-work provisions in California Labor Code §§ 850–851 ("non-overlapping claims").

Proposed Intervenors maintained that the *Chalian/Cabrera* actions were not related to their case because neither the *Chalian* nor the *Cabrera* plaintiffs alleged the three non-overlapping claims.[2] Nor had the *Chalian/Cabrera* plaintiffs been authorized by the California Labor and Workforce Development Agency (LWDA) to pursue the non-overlapping claims, because they did not satisfy the notice requirements of California Labor Code § 2699.3. The record further shows that counsel for CVS represented to Proposed Intervenors on March 31, 2020 that there were no pending class action settlement agreements that might affect their case,

---

[1] Under the rule from *Turrieta v. Lyft, Inc.*, 552 P.3d 835 (Cal. 2024), discussed *infra*, prospective intervenors are not permitted to intervene in a case alleging only overlapping claims. *Id.* at 850, 867.

[2] Proposed Intervenors also noted that the scope of the proposed classes in *Chalian/Cabrera* were narrower than their proposed classes, in that *Chalian/Cabrera* sought to represent only CVS *pharmacy* employees, whereas the Proposed Intervenors sought to represent all non-exempt CVS employees.

despite fully executing the *Chalian/Cabrera* settlement agreement earlier that month.

On June 3, 2020, the *Chalian/Cabrera* plaintiffs lodged an amended consolidated complaint that included—for the first time—the three non-overlapping claims. Proposed Intervenors received notice of the *Chalian/Cabrera* settlement on June 4, 2020. Realizing the settlement purported to settle the non-overlapping claims, Proposed Intervenors moved to intervene the following day. Because Hyams and Duhon moved to intervene immediately upon discovering that "their interests were not being adequately represented," their motion was timely.

Contrary to the dissent's assertion that the district court addressed timeliness, the court's order did not acknowledge or analyze our timeliness factors. Even if we were to interpret the district court's comment that intervention would "delay resolution of this nearly 4-year old case indefinitely" as a timeliness finding, it applied the wrong test. "The only prejudice that is relevant [to timeliness] is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not adequately represented—and not from the fact that including another party in the case might make resolution more difficult." *Smith*, 830 F.3d at 857. A correct timeliness analysis under our precedent would thus have started with an acknowledgement that Proposed Intervenors sought to intervene one day after learning that the non-overlapping

5

claims would be added to the *Chalian/Cabrera* complaint. *See id.* Under our case law there was literally no delay and, accordingly, no relevant resulting prejudice. The fact that the motion to intervene was filed four years into the litigation is a function of the *Chalian/Cabrera* plaintiffs' decision to add the three non-overlapping claims just before seeking court approval of their settlement. All three timeliness factors favor intervention.

Significantly Protectable Interest. Proposed Intervenors have a significantly protectable interest in the three non-overlapping claims. "A PAGA plaintiff serves as a 'proxy or agent of the state's labor law enforcement agencies' and represents the 'same legal right and interest as state labor law enforcement agencies.'" *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 675 (9th Cir. 2021) (quoting *Iskanian v. CLS Transp. L.A., LLC*, 173 Cal. Rptr. 3d 289, 327 (Ct. App. 2014)). A PAGA claim "shall commence only after" an aggrieved employee gives written notice to LWDA of "the specific provisions of the labor code alleged to have been violated, including the facts and theories to support the alleged violation." Cal. Lab. Code § 2699.3(a)(1)(A). LWDA reserves the State's right to "investigate the alleged violation and issue any appropriate citation." *Id.* § 2699.3(a)(2)(A). Only Hyams and Duhon complied with § 2699.3 for the non-overlapping claims, and thus only they were "authorize[d]" by the state to pursue them. *Williams v. Superior Court*, 398 P.3d 69, 74 (Cal. 2017); *see also id.* at 79 (describing these notice requirements

6

as "a condition of suit").

The *Chalian/Cabrera* plaintiffs and CVS contend that they provided sufficient notice to LWDA because they sent LWDA their Second Amended Consolidated Complaint and Notice of Settlement on June 22, 2020, after they had moved to consolidate their cases and lodged an amended complaint adding the non-overlapping claims. But providing initial notice to the State on the eve of settlement did not satisfy California's statutory notice requirement. *See* Cal. Lab. Code § 2699.3; *Williams*, 398 P.3d at 79 ("The evident purpose of the notice requirement is to afford [LWDA] the opportunity to decide whether to allocate scarce resources to an investigation, a decision better made with knowledge of the allegations an aggrieved employee is making and any basis for those allegations.").

We are mindful that California courts have explained that "[t]he Legislature enacted PAGA to remedy systemic underenforcement of many worker protections," *Williams*, 398 P.3d at 78, and, unlike class claims under Rule 23, other aggrieved CVS employees are not able to opt out of the proposed settlement of the PAGA claims, *Uribe v. Crown Bldg. Maint. Co.*, 285 Cal. Rptr. 3d 759, 771 (Ct. App. 2021), *as modified on denial of reh'g* (Oct. 26, 2021). Thus, the opportunity for LWDA to decide whether to pursue the claims is non-trivial, and we cannot say that the outcome of that decision would not be affected by the skill, reputation, experience, and resources of the counsel proposing to assume responsibility for pursuing the

7

claims. On the facts of this case, the proposed settlement represented an end-run around the notice provision in California's statutory scheme.

The California Supreme Court's decision in *Turrieta v. Lyft, Inc.*, 552 P.3d 835 (Cal. 2024), does not suggest a different result. That decision established that plaintiffs have no right to intervene in the settlement of *overlapping* PAGA claims when both sets of plaintiffs have been "duly deputized" to prosecute the same claims on behalf of the state. *Id.* at 850, 867. *Turrieta* hinged much of its reasoning on the fact that the plaintiffs bringing overlapping claims asserted the *same* state interest. *See, e.g.*, *id.* at 844–45, 855, 856, 859. The Proposed Interveners concede that *Turrieta* precludes intervention for claims that overlap with those the *Chalian*/*Cabrera* plaintiffs properly noticed, but *Turrieta* expressly declined to answer the question presented in this appeal: whether a PAGA plaintiff may intervene to assert the State's interest in PAGA claims that *only* the proposed intervenor is deputized to pursue. *Id.* at 844 n.7. Because the Proposed Intervenors seek to intervene to represent the State on claims the *Chalian/Cabrera* plaintiffs were not authorized to pursue or settle, they have a "significantly protectable interest" that warrants intervention as of right.

Risk that the Proposed Intervenors' Interest Will Be Impaired. The Proposed Intervenors demonstrated that their interests were at risk of being "impair[ed]" by "the disposition of the action" because the proposed settlement threatened to

extinguish the non-overlapping claims. *See Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011); *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 646 (2022) ("[T]he judgment issued in a PAGA action is binding on anyone 'who would be bound by a judgment in an action brought by the government.'" (citation omitted)).

Inadequate Representation. "The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *W. Watersheds Project*, 22 F.4th at 840 (citation omitted).

> To evaluate adequacy of representation, courts consider three factors: '(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.'

*Id.* at 840–41 (quoting *Citizens for Balanced Use*, 647 F.3d at 898).

On the first and second factors, CVS and the settling parties appraised the three non-overlapping claims at a fraction of the value the Proposed Intervenors had assigned. The *Chalian/Cabrera* plaintiffs did not litigate these claims, but they argue that they were provided some discovery during the course of the mediation and were therefore able to adequately assess the value of the claims. Proposed Intervenors object that the reason the *Chalian/Cabrera* plaintiffs' counsel considered the claims to be relatively valueless is that they had not conducted

adequate discovery to develop the claims, and had added them only at the eleventh hour, as a condition of settlement. We need not resolve the merits of that dispute. In order to review this appeal, it is sufficient to recognize that the complete release of the three non-overlapping claims—which the *Chalian/Cabrera* plaintiffs were not authorized to pursue and that had not been litigated in the *Chalian/Cabrera* case until the parties entered the settlement phase—amounts to more than mere "disagreement over litigation strategy." *Cf. Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013, 1021 (9th Cir. 2022). Because the *Chalian/Cabrera* plaintiffs did not litigate the non-overlapping claims, they were not well positioned to "make all of a proposed intervenor's arguments" or "capable and willing to make such arguments." *Id.* (citation omitted). In light of the purpose of the PAGA statute, it was incumbent upon the court to ensure that the broader class membership of all non-exempt CVS employees, not just pharmacy employees, was adequately represented and that counsel was positioned to advocate the merits of the non-overlapping claims. *See W. Watersheds Project*, 22 F.4th at 840–41.

On the third factor, the Proposed Intervenors offer a "necessary element to the proceeding" because they are the only plaintiffs authorized by LWDA to pursue the three non-overlapping claims, as discussed *supra*. *See* Cal. Lab. Code § 2699.3.

We conclude that because the proposed settlement included the release of the three non-overlapping claims, Proposed Intervenors satisfy the requirements for

intervention as of right under Rule 24(a).  As such, we do not reach their alternative argument that the district court abused its discretion when it refused to grant them permissive intervention under Rule 24(b).  *W. Watersheds Project*, 22 F.4th at 842.

**REVERSED AND REMANDED for further proceedings consistent with this disposition.**

*Sevag Chalian, et al v. CVS Pharmacy, Inc, et al.*, No. 20-55916
BUMATAY, Circuit Judge, dissenting:

The purpose of our diversity jurisdiction is to prevent home-state bias against out-of-state defendants. But, to protect federalism, when we sit in diversity, it's important that we defer to the State's reading of its own laws in deciding substantive law. Otherwise, we substitute our preferred reading of the law for the State's. This is contrary to our role. This case follows an unfortunate trend in the Ninth Circuit— our court overriding the principles of federalism to reach outcomes unsupported by state law in unpublished memorandum dispositions. *See, e.g.*, *Drammeh v. Uber Techs., Inc.*, No. 22-36038, 2024 WL 4003548 (9th Cir. Aug. 30, 2024); *Doe v. Uber Techs., Inc.*, No. 22-16562, 2025 WL 80365 (9th Cir. Jan. 13, 2025). At some point, our court needs to put more guardrails on these types of cases.

Ryan Hyams and Regine Duhon ("Proposed Intervenors") appeal the district court's order denying their Federal Rule of Civil Procedure 24 motions for mandatory and permissive intervention in a California Labor Code Private Attorneys General Act of 2004 ("PAGA") action brought by Sevag Chalian and Sigfredo Cabrera against CVS Pharmacy, Inc. The district court concluded that the attempted intervention was untimely and that Proposed Intervenors lacked a protectable interest. In reversing, the majority ignores the district court's timeliness ruling and California courts' interpretation of PAGA. Because the majority follows its preferred reading of PAGA rather than California's, I respectfully dissent.

1

# I.

## A.

First, the district court didn't abuse its discretion in concluding that Proposed Interventors' motion for mandatory intervention was untimely. If a court finds "that the motion to intervene was not timely, [we] need not reach any of the remaining elements of Rule 24." *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996). In determining whether a motion for intervention is timely, we consider three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Orange Cnty. v. Air California*, 799 F.2d 535, 537 (9th Cir. 1996).

Here, the district court found that intervention would "derail the settlement and delay resolution of this nearly 4-year-old case indefinitely—prejudice to the existing parties . . . not justified under the circumstances." Because of this, the court concluded that neither mandatory nor permissive intervention was justified. Those findings—hitting all three factors—satisfy the test for timeliness under both Rule 24(a)(2) and (b)(2). *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997).

The fact is that Proposed Intervenors moved to intervene in the final breaths of this lawsuit. The district court found that intervention at that late stage would "exponentially" expand the scope of the case. We have previously held such an

intervention untimely. *See United States v. Oregon*, 913 F.2d 576, 588–89 (9th Cir. 1990). Proposed Intervenors learned of the Chalian/Cabrera cases at least as early as January 2019, when CVS identified them in a case-management report. At that point, Proposed Intervenors knew that their case substantially overlapped with Chalian and Cabrera's but was ultimately "far broader" than the Chalian/Cabrera cases. To protect their overlapping and non-overlapping claims, Proposed Intervenors could have intervened then and there. They had everything they needed, including knowledge of the overlapping factual predicates at the heart of this settlement. What's more, Proposed Intervenors understood that CVS "regularly" engaged in the purported tactic of using arbitration policy and class action waiver to defeat labor lawsuits. According to Proposed Intervenors, CVS "many times" did what it did here—settling with class and PAGA representatives on a class-wide basis for an extreme discount. Despite all of this knowledge, they waited years to intervene.

They had other opportunities to intervene too: They could have intervened when Cabrera appealed partial summary judgment on his PAGA claim in January 2019 (17 months before notice of settlement). Or in March 2020 when the California Supreme Court overturned the case on which summary judgment relied (three months before notice of settlement). *See Kim v. Reins Int'l Cal., Inc.*, 459 P.3d 1123 (Cal. 2020). Or when Cabrera dismissed his appeal after having lost the motion for

3

summary judgment (same). That dismissal should have put Proposed Intervenors on notice that settlement was imminent—and they should have immediately moved to intervene. *See United States v. Alisal Water Corp.*, 370 F.3d 915, 922 (9th Cir. 2004) (denying intervention after the case was litigated for four years and proposed intervenor was "keenly aware of the litigation"); *Orange Cnty.*, 799 F.2d at 538 (denying a motion to intervene after a settlement was reached following five years of litigation and well-publicized negotiations that put the applicant on notice that its interests might be impacted); *Alaniz v. Tillie Lewis Foods,* 572 F.2d 657, 658 (9th Cir. 1978) (denying a motion to intervene two and a half years after suit was filed and seventeen days after a consent decree had become effective because the potential intervenors knew or should have known of continuing negotiations concerning the settlement agreement).

None of this is contested. The majority concedes that Proposed Intervenors learned of the Chalian/Cabrera cases in January 2019 and that they knew of the overlapping nature of many of their claims. But for some reason, the majority doesn't start the intervention clock until June 2020—when Proposed Intervenors saw that the settlement may include their non-overlapping claims. Even if this were a shock to Proposed Intervenors (which seems implausible given their knowledge of CVS's purported common evasion tactics through class action waivers), it makes no difference. That's because Proposed Intervenors didn't limit their intervention to

4

non-overlapping claims—they sought to intervene in the whole shebang. They didn't move for more limited intervention, allowing non-overlapping claims to be resolved. So the district court's timeliness finding was no abuse of discretion.

**B.**

Second, the district court did not err in concluding that Proposed Intervenors lacked a protectable interest in the litigation. The California Supreme Court recently established that plaintiffs have no right to intervene in the settlement of *overlapping* PAGA claims. In *Turrieta v. Lyft, Inc.*, the California Supreme Court reaffirmed that "[e]very PAGA action . . . is a representative action on behalf of the state." 16 Cal. 5th 664, 681 (2024) (simplified). According to the California Supreme Court, PAGA serves several statutory purposes: (1) "to vindicate the [California Labor and Workforce Development Agency's ('LWDA')] interest in enforcing the Labor Code," (2) "to enforce *the state's interest* in penalizing and deterring employers who violate California's labor laws," and (3) "to assist [the state] with labor law enforcement." *Id.* at 690 (simplified). A PAGA plaintiff is thus not litigating a claim on the plaintiff's behalf but is litigating "a dispute between an employer and the *state*." *Id.* at 681 (simplified).

Given this, the California Supreme Court concluded that a PAGA plaintiff "cannot establish a cognizable interest to support intervention" under California law "based on [the] asserted authority, as the state's proxy or agent, to assert any state

right to intervene." *Id.* at 705. Indeed, the court expressly repudiated the Ninth Circuit's assumption that a would-be PAGA intervenor has a "significantly protectable interest relating to the property or transaction" to satisfy federal mandatory-intervention law. *Id.* at 710 n.27 (quoting *Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013, 1020 (9th Cir. 2022)). It explained that "[a]ny such assumption appears to be in tension with our analysis and conclusion, at least insofar as proposed intervenors are relying exclusively on *the state's* interest and their status as the state's agent or representative." *Id.*

*Turrieta* thus concluded "that an aggrieved employee's status as the State's proxy in a PAGA action does not give that employee the right to seek intervention in the PAGA action of another employee, to move to vacate a judgment entered in the other employee's action, or to require a court to receive and consider objections to a proposed settlement of that action." *Id.* at 716.

The majority concludes that *Turrieta* and other California precedents don't control this case because Proposed Intervenors seek to intervene on non-overlapping PAGA claims. True, *Turrieta* expressly did not extend its holding to cover *non-overlapping* claims. *See id.* at 684 n.7. But *Turrieta*'s analysis applies with equal force to PAGA plaintiffs seeking to intervene on non-overlapping claims.

That's because the nature of the PAGA claim does not change—at all times it remains the *state's* interest to be vindicated. *See id.* at 682. That is true regardless

6

of who submitted notice to the LWDA under California Labor Code § 2699.3. The California Supreme Court's rationale does not hinge on which plaintiff submitted notice to the LWDA because it is always the state's underlying interest. And notice to the LWDA doesn't transform the nature of the PAGA claim. And being deputized under PAGA is distinct from having a "protectable interest" necessary for mandatory intervention. As the California Supreme Court made clear, deputization does not confer a protectable interest because the state retains the interest at all times. So whether the settlement violates the statutory notice provisions under § 2699.3 is irrelevant under Rule 24(a)(2) and is not properly before us.

In enacting PAGA, the California Legislature placed responsibilities for administrating settlements on the courts and the LWDA—and no one else. *Id.* at 694–97. As the California Supreme Court emphasized, "the Legislature contemplated formal oversight and review of proposed settlements *only by* the LWDA and trial courts." *Id.* at 694 (emphasis added). The court observed that PAGA's legislative history doesn't "mention or suggest[] oversight by anyone" other than LWDA or courts. *Id.* In all cases, the LWDA is expected to vindicate the state's interest and "the LWDA may offer comments to courts on proposed settlements and that courts have discretion to consider such comments." *Id.* at 706–07. Thus, PAGA does not contemplate that other would-be PAGA plaintiffs (even those with non-overlapping claims) have a role in approving settlements.

7

Finally, the California Supreme Court was concerned that allowing intervention by other plaintiffs would make PAGA claims more difficult to bring. Permitting "multiple PAGA plaintiffs, all representing the same state interest, to formally intervene in and become parties to the PAGA action of another PAGA plaintiff who is already representing that state interest" would "clearly implicate[] concerns about curtailing PAGA litigation by making it more difficult." *Id.* at 699. The California Supreme Court has explained that "[h]urdles that impede the effective prosecution of representative PAGA actions undermine the Legislature's objectives." *See Williams v. Superior Court*, 3 Cal. 5th 531, 548, (2017). Those concerns do not disappear because a PAGA plaintiff asserts some non-overlapping claims. As this appeal proves, last-minute intervention is a hurdle that has made this case much more complicated. The settlement agreement here was made in 2020—nearly five years later, it is still not done. Thus, the majority throws up roadblocks contrary to the California Legislature's intent.

## II.

Having concluded that Proposed Intervenors satisfied the requirements for intervention as of right, the majority did not reach permissive intervention. The district court didn't abuse its discretion in denying Proposed Intervenors' motion for permissive intervention under Rule 24(b) either. "Permissive intervention is committed to the broad discretion of the district court." *Orange Cnty.*, 799 F.2d at

8

539. Before granting permissive intervention, a district court must analyze whether intervention would unfairly prejudice the existing parties. *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). Discretionary factors a district court can consider include "whether the intervenors' interests are adequately represented by other parties," "whether intervention will prolong or unduly delay the litigation," and "whether the parties seeking to intervene will significantly contribute to . . . the just and equitable adjudication of the legal questions presented." *Callahan*, 42 F.4th at 1022.

As discussed above, the district court concluded that Proposed Intervenors' intervention would "delay resolution of this nearly 4-year-old case indefinitely— prejudice to the existing parties that is not justified under the circumstances." The district court also found that Proposed Intervenors could contribute to the LWDA's scrutiny of a settlement without intervening, a "less disruptive" means of advancing their arguments than intervention. Those findings are supported by the record and are not clearly erroneous. The district court thus did not abuse its discretion in denying permissive intervention.